IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JABBOK SCHLACKS AND WILLIAM SCHLACKS, | ) ) ) |
| Plaintiff, | ) ) ) CASE NO.: |
| v. | ) ) |
| NEIL CHHEDA, SCHLACKS 2020 TRANSFER LLC, AND RC OPPORTUNITY LLC | ) ) ) ) |
| Defendant. | |

## **COMPLAINT TO ENJOIN ARBITRATION**

Plaintiffs JABBOK SCHLACKS ("Jabbok") and WILLIAM SCHLACKS ("Willy") (together, "Plaintiffs" or the "Schlacks"), by and through their attorneys, submit this complaint for injunctive relief against Defendants NEIL CHHEDA ("Defendant Chheda"), SCHLACKS 2020 TRANSFER LLC ("Transfer LLC"), and RC OPPORTUNITY LLC and state as follows:

## **NATURE OF THE CASE**

1. This case involves an effort by Defendant Chheda to invoke the arbitration clause ("Arbitration Demand") from a limited partnership agreement in order to enforce his rights under a separate stock option agreement that has no arbitration provision and, as a result, has to be litigated in court. The Arbitration Demand, filed on May 22, 2024, with JAMS in Delaware, is marked as **Exhibit A**, and we refer to each of its exhibits (most notably the agreements discussed in this Complaint) as **Exhibits 1** *et seq.* in this Complaint.

2. The limited partnership agreement is for TKF II L.P. ("TKF") (**Exhibit 1**). It contains a provision requiring disputes arising under that agreement to be arbitrated in Delaware before JAMS.

3. But, the dispute Defendant Chheda seeks to arbitrate does not arise from the TKF Agreement.

4. Instead, it stems from his purported right to obtain stock from EquipmentSharecom Inc. ("ES") under a pair of agreements that do not include an arbitration provision. Specifically, Defendant Chheda alleges that the Schlacks breached valid agreements (**Exhibit 2 & 3,** "Option Agreements") between Schlacks 2020 Transfer LLC ("Transfer LLC")—an entity wholly controlled by Defendant Chheda—and the Schlacks by not delivering stock to Transfer LLC upon demand.

5. Because the agreements that govern the stock options at issue default to a court of law for disputes, rather than to arbitration, Plaintiffs seek a ruling, pursuant to *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1189 (2024), enjoining the wrongly-instituted JAMS arbitration.

## PARTIES

6. Jabbok Schlacks is a citizen of Missouri, residing in Columbia, Missouri. At all times herein relevant, Jabbok was the Chief Executive Officer of, a director of, and a shareholder in ES.

7. Willy Schlacks is a citizen of Missouri, residing in Columbia, Missouri. At all times herein relevant, Willy was the President of, a director of, and a shareholder in ES.

2

8. Defendant Chheda is a citizen of Massachusetts, residing in Boston, Massachusetts. Upon information and belief, Defendant Chheda is a General Partner at Romulus Capital, a venture capital firm he founded in 2008, where he leads sophisticated investments in technology-enabled companies across sectors and stages. At all times herein relevant, Defendant Chheda was a director at ES and a trusted advisor to the Schlacks.

9. Transfer LLC is a Delaware limited liability company with its principal place of business in Boston, Massachusetts. Upon information and belief, Transfer LLC's manager is Defendant Chheda and, upon information and belief, the members of Transfer LLC are Defendant Chheda's minor children, who are also citizens of Massachusetts, residing in Boston, Massachusetts. As a result, Transfer LLC is a citizen of Delaware and Massachusetts.

10. RC Opportunity is a Delaware limited liability company with its principal place of business in Boston, Massachusetts. Upon information and belief, Defendant Chheda is RC Opportunity's sole member and manager.

11. Non-party ES is a privately held corporation organized under the laws of Delaware, with its principal place of business in Columbia, Missouri. ES's principal business is the sale and rental of construction equipment.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the

3

amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

13. This Court has jurisdiction over Defendant Chheda and this matter pursuant to, *inter alia*, 735 ILCS 5/2-209(a)(1) & (7), because Defendant Chheda knowingly and intentionally sought out, entered into an agreement with, and did business with a citizen of this State for the express purpose of taking advantage of business connections between that citizen and the State of Missouri.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because of the substantial connections of this case to the Western District of Missouri, including, *inter alia*, the Schlacks are residents of this district, the harm suffered if a declaratory judgment is not granted will be directed towards residents of this district, and Defendant Chheda is subject to jurisdiction in this district.

## FACTUAL ALLEGATIONS

15. Plaintiffs Jabbok and Willy Schlacks founded ES in Columbia, Missouri, in 2014, to enable jobsites to run more productively and safely. As the company grew, the Schlacks sought the advice of an expert financier, Defendant Chheda.

16. Defendant Chheda operates Romulus Capital, a venture capital fund, and touts himself as someone with "the voice of an experienced entrepreneur" who "leads investments in technology-enabled companies across sectors and stages" and helps founders with "critical company-building tasks" including "raising capital for continued growth."

4

17. In or about October 2020, while ES was first contemplating a Series C round of venture capital financing, Defendant Chheda proposed to the Schlacks that they should start the ES Venture Fund which would incubate businesses for ES's benefit and that they should fund it with shares of stock they received from ES under the terms of an equity incentive compensation plan.

18. On or about December 2, 2020, Defendant Chheda sent Willy Schlacks a draft of an option agreement—drafted by Chheda's counsel, Peter Moldave—that Defendant Chheda had proposed as the funding vehicle for the ES Venture Fund. Even the original draft did not have an arbitration clause in it.

19. Under Defendant Chheda's proposal, the Schlacks would transfer one-third of the shares they would be granted by ES to Defendant Chheda himself or an entity he controlled that would not be part of the ES Venture Fund. But, Chheda promised he would use the stock he received for the benefit of the ES Venture Fund.

20. With that promise in mind, Willy and Jabbok each executed the Option Agreements with Transfer LLC.

21. Subsequently, Defendant Chheda invoked the Option Agreements (and some subsequent amendments), requesting that the Schlacks tender the shares to which he believes he is entitled.

22. The Schlacks did not tender all of the shares—arguably rendering them in breach of the Option Agreements.

23. While the Schlacks have defenses to their actions, Defendant Chheda must litigate the question of what was required to satisfy the Option Agreements (as

5

subsequently amended) in court, because the lack of dispute resolution or forum selection provision in the Option Agreements implicitly relegates disputes under them to courts of law.

24. Nonetheless, on May 22, 2024, Defendant Chheda filed the Arbitration Demand with JAMS. JAMS issued a Commencement Letter on June 12, 2024, meaning it recognized the Arbitration Demand as containing "[a] pre-dispute written contractual provision requiring the Parties to arbitrate the dispute or claim and specifying JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS."

25. Despite invoking the TKF Agreement in the Arbitration Demand, Defendant Chheda makes it plain that he is seeking to recover for breach of the Option Agreements and their amendments.

26. For example, he clearly states in paragraph 1 of his Arbitration Demand, "Petitioners bring this proceeding as a result of the Schlacks' failure to deliver stock in EquipmentShare.com, Inc. ("ES") to 2020LLC [a.k.a. Transfer 2020] *under a pair of option agreements. . . .*" (Exhibit A at 1) (emphasis added.)

27. And, he specifically disclaims any relevance of the TKF Agreement to the dispute he seeks to arbitrate: "Petitioners seek a declaratory ruling that TKF LP has no right or entitlement to the Option Shares and that the Option Shares must be delivered to 2020LLC." *Id.* at 3. The Schlacks disagree with most of Chheda's allegations (including that the Options Shares must be delivered to Chheda through

Transfer 2020 or by any other means) but on this point the parties are in accord: The TKF agreement does not control the dispute.

28. Finally, he seeks the following relief:

- An order that Jabbok shall specifically perform all of his obligations under the Jabbok Schlacks *Option Agreement*;
- An order that William shall specifically perform all of his obligations under the William Schlacks *Option Agreement*;
- An award that Jabbok has breached the Jabbok Schlacks *Option Agreement*, as amended, and that 2020LLC is entitled to an award of damages from Jabbok of no less than $29,849,775;
- An award that William has breached the William Schlacks *Option Agreement*, as amended, and that 2020LLC is entitled to an award of damages from William of no less than $29,849,775.

(Exhibit A at 21-22) (emphasis and bullet points added.)

29. In short, the agreements include: (i) two that require a dispute be resolved in court (the Option Agreements); and (ii) one that does not involve any of the parties to the Option Agreements (the TKF Agreement) and that only requires arbitration of matters arising out of that agreement itself—not the Option Agreements. Under *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1189 (2024), in such cases even the question of whether the dispute could be arbitrable must be decided by a court.

30. Accordingly, even though the TKF Agreement is itself unrelated to the question of whether the Schlacks have performed under the Option Agreements, the Schlacks submit the question of the arbitrability of the Arbitration Demand to this Court.

## COUNT I
### Stay of Arbitration

31. Plaintiffs incorporate and re-allege the factual allegations set forth in the other paragraphs of this Complaint as if fully set forth herein.

32. Section 4 of the Federal Arbitration Act requires a court to decide questions about the formation or existence of a purported arbitration agreement. *See, e.g., Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir. 2000). Federal courts have the power to stay or enjoin arbitration while they determine these "gateway" questions as to whether a valid agreement to arbitrate actually exists. *See, e.g., MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386 (3d Cir. 2020).

33. In his Arbitration Demand, Defendant Chheda claims that the Schlacks breached the Option Agreements. Specifically, he alleges, "2020LLC also seeks damages for breach of contract against the Schlacks …" for failing to deliver the "Option Shares" as required by the Option Agreements. He also seeks specific performance of the Option Agreements and their amendments.

34. Neither the Option Agreements nor their amendments have an arbitration provision. As a result, the only implied forum for disputes about their performance is a federal or state court, since arbitration is a creature of contract.

8

35. Nevertheless, Defendant Chheda attempts to bootstrap his breach of contract claim to an arbitration provision in an unrelated limited partnership agreement, the TKF Agreement.

36. The Option Agreements govern the Schlacks' grant of stock to Defendant Chheda. When a dispute arises over a contract without an arbitration provision, "the court should decide that question." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995).

37. Defendant Chheda's Arbitration Demand wrongly claims that the question of arbitrability should be resolved by the arbitrator, invoking an agreement that does not mention the Schlacks transferring stock at all—and to which the parties to the stock transfer are parties.

38. On May 24, 2024, the United States Supreme Court held that, "[w]here parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs." *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1189 (2024).

39. Accordingly, even if the Option Agreements and their amendments AND the unrelated agreement containing an arbitration clause all apply here (and they do not), the Court should issue a stay of arbitration to allow this court to decide whether the disputes in the Arbitration Demand are, in fact, arbitrable.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court to enter a judgment:

(a) declaring the Option Agreements control the issue of arbitrability;

(b) staying the arbitration; and

(c) granting such other and further relief as the Court may deem equitable and just.

Dated: July 10, 2024

Respectfully submitted,

*/s/ Scott R. Ast*

| | |
|---|---|
| Scott R. Ast | MO # 51699 |
| Michele F. Sutton | MO # 57942 |

SCHARNHORST AST KENNARD GRIFFIN, PC
1100 Walnut, Suite 1950
Kansas City, Missouri 64106-2143
Telephone: (816) 268-9400
Facsimile: (816) 268-9409
E-mail: sast@sakg.com
msutton@sakg.com

Vincent P. (Trace) Schmeltz III
(*pro hac vice* pending
**BARNES & THORNBURG LLP**
One N. Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone: 312-214-5602
Fax: 312-759-5646
Email: tschmeltz@btlaw.com

*Counsel for Plaintiffs*