## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| JABBOK SCHLACKS AND WILLIAM SCHLACKS, | ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | CASE NO.: 2:24-CV-04118 |
| v. | ) ) | **JURY DEMAND** |
| NEIL CHHEDA, SCHLACKS 2020 TRANSFER LLC, AND RC OPPORTUNITY LLC | ) ) ) | |
| | ) | |
| Defendants. | | |

## FIRST AMENDED COMPLAINT

Plaintiffs JABBOK SCHLACKS ("Jabbok") and WILLIAM SCHLACKS ("Willy") (together, "Plaintiffs" or the "Schlacks"), by and through their attorneys, submit this first amended complaint for declaratory judgment and other relief against Defendants NEIL CHHEDA ("Defendant Chheda"), SCHLACKS 2020 TRANSFER LLC ("Transfer LLC"), and RC OPPORTUNITY LLC ("RC Opportunity") (collectively, "Defendants") and state as follows:

## NATURE OF THE CASE

1.      Renowned author, life coach and sociologist Martha Beck, PhD, is credited with popularizing the saying, "The way we do anything is the way we do everything." For Defendant Neil Chheda, the way he does everything appears to be by misrepresenting facts in order to profit handsomely.

2.      Defendant Chheda operates Romulus Capital ("Romulus"), a venture capital fund, and touts himself as someone with "the voice of an experienced entrepreneur" who "leads investments in technology-enabled companies across

sectors and stages" and helps founders with "critical company-building tasks" including "raising capital for continued growth."

3.  What has gone unsaid, however, is that Defendant Chheda has made a living out of cheating and defrauding his investors and others who have reposed trust in him, including his former business partner and, now, the Schlacks.

4.  In late June, a federal judge from the United States District Court for the District of Massachusetts held that, "the Complaint plausibly alleges that [Defendant Chheda and the other Romulus defendants] repeatedly misrepresented two facts" in connection with several sales of interests in limited partnerships that held shares of EquipmentShare.com, Inc. ("ES"). *Republic Maximal LLC et al. v. Romulus Capital Partners II, et al,* No. 22-CV-10429-MLW, 2024 WL 3163200, at *4 (D. Mass. June 25, 2024). The Court held that the *Republic Maximal* Complaint also "allege[d] facts that plausibly give rise to a strong inference of scienter," including due to allegations of "personal financial gain" that "weigh heavily in favor of a scienter inference." *Id.* at 14-15.

5.  Elsewhere, investors have sued Defendant Chheda for fraud and breach of fiduciary duty. In *S2 Growth I LLC v. Romulus Capital Management, LLC et al.,* 1:24CV10398 (D. Mass. Feb 20, 2024), the investors claimed Defendant Chheda defrauded them specifically when raising money to invest in ES. *See also Patrick, Stephen et al vs. Romulus Capital Partners II, LLC et al.,* 0607814/2023 N.Y.S.10d (2023).

6.     In a case filed against him by his co-manager and fellow member in Romulus Capital Partners II, LLC, *Gupta v. Chheda*, No. CIV N24M-05-014 at ¶ 2 (Mass. Super. Ct., Suffolk Dept. July 18, 2023), Krishna Gupta has alleged that "Mr. Chheda hatched a scheme designed both to enrich himself … and to ultimately steal Mr. Gupta's interest in Romulus Capital Partners II, LLC." This case tells a similar story, seemingly proving out the maxim made famous by Dr. Beck.

7.     Here, after positioning himself as a venture capital expert on whom ES founders Willy and Jabbok Schlacks could rely, Defendant Chheda implemented a scheme to personally benefit by obtaining a large amount of ES's stock from the Schlacks under false pretenses.

8.     In the fall of 2020, Defendant Chheda was the primary architect of a plan to start a venture capital fund that would be funded by stock issued by ES to its executives under an Equity Bonus Plan ("EBP").

9.     Publicly, Defendant Chheda presented to the ES Board of Directors that he wanted the EBP to issue a significant percentage of ES's total common stock to the Schlacks who, in turn, would assign one-third of their shares to fund the ES-related venture capital fund ("ES Venture Fund"). He also constantly assured the Schlacks that they could "trust him" as he helped them develop this ES-oriented venture fund.

10.     Privately, Defendant Chheda intended to redirect those shares into his own pockets.  To effect his scheme, he first coerced the Schlacks to assign the one-third batch of shares (the "Option Agreements") that was to go to the ES Venture

Fund to an entity he controlled personally, Schlacks 2020 Transfer, LLC ("Transfer LLC"). In doing so, he assured them he would stick to the original plan and use the shares to fund the ES Venture Fund.

11.     Then, while continuing to promulgate the fiction that he would use the stock the Schlacks transferred to him for the ES Venture Fund, Defendant Chheda sprung his trap. He convinced the Schlacks to accelerate the vesting date for half of his shares so he could buy them immediately (the "First Amendments"). Then, he lied to them about an amendment he was drafting (the "Second Amendments"), tricking them into signing away approximately two-thirds of the shares they were to receive through the EBP—as opposed to the one-third they originally granted him.

12.     In short, in this case, as in *Republic Maximal, Gupta,* and the other investor lawsuits, Defendant Chheda engaged in a pernicious scheme of misstatements in order to line his own pockets. Here, of course, he also did so at the expense of two people who valued him as an expert in structuring and fundraising for a venture capital fund, making Defendant Chheda's wrongdoing even more reprehensible.

13.     Due to Defendant Chheda's false statements, Plaintiffs request that the Court declare the Option Agreements and their amendments void *ab initio*. Furthermore, to the extent he acted willfully and in bad faith, Defendant Chheda should be required to pay punitive damages to deter future egregious conduct.

14.     Finally, Defendant Chheda also misrepresented the applicability of an arbitration agreement between completely different parties and filed an arbitration

before JAMS in Delaware seeking to compel the Schlacks to tender their ES stock to him. Because the agreements that govern the stock options at issue in this case default to court, rather than arbitration, Plaintiffs also seek a ruling enjoining the wrongly instituted JAMS arbitration.

## PARTIES

15.     Jabbok Schlacks is an individual residing in Columbia, Missouri. Jabbok is a citizen of Missouri. At all times herein relevant, Jabbok was the Chief Executive Officer of, a director of, and a shareholder in ES.

16.     Willy Schlacks is an individual residing in Columbia, Missouri. Willy is a citizen of Missouri. At all times herein relevant, Willy was the President of, a director of, and a shareholder in ES.

17.     Defendant Chheda is an individual residing in Boston, Massachusetts. Defendant Chheda is a citizen of Massachusetts. Upon information and belief, Defendant Chheda is a General Partner at Romulus, a venture capital firm he founded in 2008, where he leads sophisticated investments in technology-enabled companies across sectors and stages. At all times herein relevant, Defendant Chheda was a director at ES and a trusted advisor to the Schlacks.

18.     Transfer LLC is a Delaware limited liability company with its principal place of business in Boston, Massachusetts. Upon information and belief, Transfer LLC's manager is Defendant Chheda and, upon information and belief, the members of Transfer LLC are Chheda's children, who are also citizens of Massachusetts, residing in Boston, Massachusetts. As a result, Transfer LLC is a citizen of Massachusetts.

19.     RC Opportunity is a Delaware limited liability company with its principal place of business in Boston, Massachusetts. Upon information and belief, Defendant Chheda is RC Opportunity's sole member and manager. As a result, RC Opportunity is a citizen of Massachusetts.

20.     Non-party ES is a privately held corporation organized under the laws of Delaware, with its principal place of business in Columbia, Missouri.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

22.     This Court has jurisdiction over Defendants pursuant to Mo. Rev. Stat. § 506.500.1(1)-(3), because, *inter alia*, Defendants engaged in business with Plaintiffs and/or ES within the State of Missouri, made contracts with Plaintiffs and/or ES within the State of Missouri, and committed tortious acts against Plaintiffs within the State of Missouri.

23.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because of the substantial connections of this case to the Western District of Missouri, including, *inter alia*, the Schlacks are residents of this district, the harm suffered if a declaratory judgment is not granted will be directed towards residents of this district, and Defendants are subject to jurisdiction in this district.

## FACTUAL ALLEGATIONS

### The Schlacks and ES

24.     ES was founded in 2014 by the Schlacks brothers. Their goal was to transform the construction industry through technology. Since then, ES has developed into a successful business that offers equipment rental services in addition to telematics and fleet management solutions.

25.     ES is one of the fastest-growing equipment solutions provider in the United States, experiencing high demand for its fleet management technology and equipment solutions. As of Q1, 2024, ES has opened more than 215 rental, retail, and service locations across 38 states with 60 new locations launched and more than 1,100 new jobs created in 2023 alone. In a recent Bloomberg profile, the magazine estimated ES's valuation at 3.8 billion dollars.

### Defendant Chheda Advises The Schlacks As A Venture Capital Expert

26.     Defendant Chheda has substantial experience in venture capital and he is the managing partner of multiple venture capital funds under the assumed name "Romulus Capital" ("Romulus").

27.     Romulus is an early stage venture capital fund. Upon information and belief, Mr. Krishna Gupta founded the company in 2008 and Mr. Chheda joined as a partner several years later. (Since then, as the *Gupta* litigation described above demonstrates, Defendant Chheda has ejected Mr. Gupta from the firm.) The firm focuses on early round financing for, among others, companies that sell technology to solve problems in large traditional industries, like construction.

28.     According to its own media, "Romulus pitches itself as a more hands-on investor than early founders can get from a large firm," says Chheda. https://www.forbes.com/sites/alexonrad/2016/06/01/how-romulus-capital-built-a-150-million-firm/

29.     Similarly, in Defendant Chheda's own words, "Rome was not built in a day and neither were great companies, and that's who we are at Romulus. We get very deeply involved in helping our founders do everything it takes." Interview with Gesmer Updegrove LLP, at 0:58, https://www.youtube.com/watch?v=INtZDb2-xjc (Uploaded February 2, 2023). "The point of Romulus is to help founders be bigger and greater than they could on their own." *Id.* at 3:50.

30.     Prior to joining Romulus, Defendant Chheda was an advisor at McKinsey & Company, was in product design at Zynga, founded and sold a business, and built a purportedly profitable investment firm. He is Yale University (A.B.) and Harvard Business School (MBA) educated.

31.     Certain Romulus funds controlled by Defendant Chheda invested in the seed and Series A rounds of ES's financing.

32.     Shortly after those investments, Defendant Chheda joined ES's board of directors ("ES Board").

33.     Defendant Chheda has regularly provided advice directly to the Schlacks (*i.e.,* not as a board member, but merely as an advisor), who are entrepreneurs looking to incubate new companies in the construction technology space, about the benefits of venture capital, the way the venture capital industry

operates, as well as structuring and funding a venture fund—all areas in which he has superior knowledge.

34.     With his deep experience, Defendant Chheda quickly inserted himself into the Schlacks' inner circle of personal advisors. The Schlacks deferred to him as having superior knowledge of such venture capital related topics as the structuring and funding of enterprises and venture capital funds.

**Romulus Fails To Complete Series C Financing**

35.     In the spring of 2020, Defendant Chheda proposed entering into a Series C round of financing with ES.  Specifically, he offered around a $10 million investment at a high-valuation, which ES accepted. After ES went through the legal work to complete the financing round, including preparing a revised corporate charter, Chheda and Romulus failed to complete the transaction.

36.     As a result, ES was forced to raise money through other means and so it issued SAFEs—simple agreements for future equity.

37.     But, by the fall of 2020, ES's auditor was insisting the SAFEs needed to be accounted for as debt.

38.     Treating the SAFEs like debt would have posed a problem for ES.  As Defendant Chheda discussed with the Schlacks at the time, it would have negatively impacted ES's debt-to-equity ratios in other financing.

39.     Specifically, if the SAFEs were treated as debt, that would have negatively triggered one or more of these ratios.

40.     As a result, in a December 17, 2020, Board meeting, the directors discussed converting the SAFEs through a Series C transaction, in which the SAFEs

would be cancelled and converted into stock. This, of course, would avoid the risk of default on ES's financing.

**Defendant Chheda Proposes A Venture Capital Fund**

41. In or about October 2020, while ES was first contemplating the Series C round of financing, Defendant Chheda proposed to the Schlacks that they actually use the EBP to fund the previously proposed venture capital fund (as defined above, the "ES Venture Fund"), for the ultimate benefit of ES.

42. Defendant Chheda worked directly with consultants and prepared final documents for Willy to use in pitching the ES Venture Fund to the ES Board, including the proposal that the ES Venture Fund should be funded through stock granted to the Schlacks through the EBP.

43. On or about November 3, 2020, Defendant Chheda sent the Schlacks a report titled "2020 Equity Incentive Plan," prepared by consultants. This document proposed that a significant percentage of ES common stock would be granted, through the EBP, to "Longview 2020 LLC - William Schlacks, Jabbok Schlacks; Longview 2020 Management Company LLC (of which Neil Chhed [sic] is a member)." *See* Exhibits A1 and A2.

44. On or about November 3, 2020, Defendant Chheda sent the Schlacks a document titled "LV Equity plan presentation," which was a slide deck for Willy to present to the ES Board. *See* Exhibit A3. This document proposed that a significant percentage of ES common stock would be granted, through the EBP, to "Willy, Jabbok, Neil (Longview)." *See id.*

45.     Based on Defendant Chheda's repeated oral representations in this same time period, the Schlacks understood that "Neil (Longview)" and "Longview 2020 Management Company LLC" each were references to the portion of the EBP stock being used on behalf of the entity referred to throughout this Complaint as the ES Venture Fund.

46.     On or about December 2, 2020, Defendant Chheda sent Willy a draft of an option agreement—drafted by his counsel, Peter Moldave—that Defendant Chheda had proposed as the funding vehicle for the ES Venture Fund. *See* Exhibits B1-B3.

47.     Under Defendant Chheda's proposal—unlike what he proposed to the Board—the Schlacks would transfer one-third of the shares they would receive through the EBP to Defendant Chheda himself or an entity he controlled that would not be actually part of the ES Venture Fund and have no written obligations to support the venture fund.

48.     With the intense effort and focus on the Series C and with the Schlacks continuing to rely on Defendant Chheda's superior knowledge of—as well as his special expertise in forming and funding—venture capital funds, it was several weeks before the Schlacks reached the understanding set out in the prior paragraph.

49.     Upon this discovery, Willy Schlacks asked Defendant Chheda how the option shares would be used to fund the ES Venture Fund.  Defendant Chheda told Willy Schlacks that he should trust him and that they would formulate Defendant Chheda's obligations to the ES Venture Fund *after* the Series C Round was complete.

In other words, Defendant Chheda assured Willy Schlacks that these shares would be used to help fund the ES Venture Fund, while advising that the parties wait until after the Series C Round was complete to formalize Defendant Chheda's obligations.

**Defendant Chheda Pushes The Schlacks To Assign Options To Him**

50. The Schlacks were not initially committed to the idea of transferring shares to an entity formally outside of or unconnected with the ES Venture Fund, but relied on Defendant Chheda's assurance that they should trust him.

51. In late December 2020, Defendant Chheda began to pressure the Schlacks into making the assignment soon. In fact, he used the pressure of the refinance of the SAFEs to push the Schlacks into acting before they were ready.

52. Specifically, Defendant Chheda refused to give his consent as an ES board member to an action by unanimous written consent that approved of the steps needed to issue and replace the SAFEs financing with the Series C stock unless ES included operating language to allow the Schlacks to transfer stock to him.

53. Based on his steadfast refusal, ES's lawyers prepared an Action by Unanimous Written Consent of the Board of Directors of Equipmentshare.com, Inc., dated December 31, 2020 ("December 2020 Written Unanimous Consent") (Exhibit C), that effected the Series C financing and also included:

    i.    A provision authorizing ES's officers to enter into an Amended and Restated Right of First Refusal and Co-Sale Agreement (December 2020 Written Unanimous Consent at 2, and Exhibit D to the December 2020 Written Unanimous Consent at 8) to allow the Schlacks to transfer stock without restriction;

    ii.    A provision authorizing the Board to solicit ES's shareholders consent to a "Bylaws Amendment" that would allow the Schlacks to transfer stock without restriction (December 2020 Written

Unanimous Consent at 3, and Exhibit F to the December 2020 Written Unanimous Consent at 10.1.2(vii));

iii.    A provision approving amendments to Restricted Stock Purchase Agreements under which the Schlacks had purchased shares in ES and authorized ES's officers to enter into the amendments on ES behalf (December 2020 Written Unanimous Consent at 3, and Exhibit G to the December 2020 Written Unanimous Consent at 1), the purpose of which was to allow the Schlacks to transfer without stock restriction, whether they received it from the EBP or not; and

iv.    A provision adopting an Equity Bonus Program that would ensure the Schlacks received a precise number of shares—in fact, the very same number that was later reflected in the on or about December 31, 2020, option agreements with Transfer LLC (the "Option Agreements" (Exhibits E1 and E2)), without restriction (December 2020 Written Unanimous Consent at 4, and Exhibit H to the December 2020 Written Unanimous Consent at 1).

54.    Each document included with the December 2020 Written Unanimous Consent was very precise as to the number of shares for which it was lifting specified restrictions—and it was the same number later reflected in the Option Agreements.

55.    A December 29, 2020, e-mail from Defendant Chheda's lawyer makes clear that Defendant Chheda knew full well that the Schlacks could not transfer one single share more than was authorized by ES's shareholders and Board. In it, Defendant Chheda's counsel emphasized the fact that two of the documents to be attached to the December 2020 Written Unanimous Consent needed to be revised to match the Option Agreements: "[T]he number/concept is ok in the By-law amendment but the numbers need to be changed in the ROFR and the RSA amendment" because they did not match the numbers in the "option agreement." *See* Exhibit D.

56.    In short, Defendant Chheda masterminded the concept of funding the ES Venture Fund with stock issued by an EBP to the Schlacks. Then, he finagled an

assignment of one-third of the Schlacks' EBP shares to his entity, Transfer LLC, rather than directly to the ES Venture Fund. And, he used the pressure of completing the Series C round to compel ES's Board and shareholders to act promptly on his behalf by approving and signing the amendments in Exhibits D, F, G and H to the December 2020 Action by Unanimous Consent. Without these amendments, the Schlacks could not legally transfer stock to Defendants Chheda and Transfer LLC.

57.    Of further significance, none of the amendments Defendant Chheda insisted must be in the December 2020 Action by Unanimous Consent were needed to facilitate the Series C round of refinancing.

58.    At the same time, Defendant Chheda never corrected the false promise that he had made in his PowerPoint presentation to ES's Board, *see* Exhibit A3, that he would use the transferred shares for a venture capital fund for the benefit of ES in order to induce the Schlacks to make the transfer at all.

**Defendant Chheda Purposefully Hid His Stock Grab From The ES Board**

59.    In taking these actions, it is abundantly clear that Defendant Chheda acted with a reckless or intentional mental state in instituting this fraudulent scheme. Specifically, while his lawyer made revisions to the December 2020 Action by Unanimous Consent packet to ensure the Schlacks could transfer the precise number of shares, without restrictions, that would be called out in the Option Agreements, neither he nor Defendant Chheda amended the "Approval of Interested Party Transactions" section of the packet, *see* Exhibit C, December 2020 Action by Unanimous Consent at 4.

60. Specifically, pursuant to Delaware General Corporations Law Section 144, corporate contracts that benefit an officer or director of the corporation are "void or voidable" unless the material facts of the benefit are disclosed and specifically ratified by the Board.

61. Here, it is plain (in hindsight, most certainly) that Defendant Chheda had a personal, material, financial interest in the amendments being decided upon to the extent they permitted the Schlacks to transfer exactly the number of shares allowed in the Option Agreements a piece without restriction. Yet, again, neither he nor his lawyer took steps to ensure that interest was known and ratified by the ES Board, by amending (for example) the Approval of Interested Party Transactions section, at a minimum. This bolsters the plausible inference that Defendant Chheda intended to hide his nefarious actions.

**The Option Agreements**

62. In reliance on Defendant Chheda's promise to use the stock they would transfer to him for the ES Venture Fund, on or about December 31, 2020, Willy and Jabbok each executed an option agreement with Transfer LLC (defined above as the "Option Agreements"). *See* Exhibits E1 and E2.

63. The Option Agreements provided that while the Schlacks were entitled to receive a number of "Award Shares" from the EBP, Transfer LLC would have "the right to acquire (the "Option Right") from time to time up to [a very precise number of] shares (the "Option Shares") of Common Stock of the Company from [each of the

Schlacks], subject to the terms and conditions of this Agreement including vesting provisions." Exhibits E1 and E2.

64.     Based on the precise number of shares listed in the Option Agreements, these are the same shares contemplated in Defendant Chheda's initial PowerPoint presentation to the ES Board of Directors, *see* Exhibit A—the shares he agreed would go to "Longview" or the "Longview 2020 Management Company LLC."

65.     Exhibit A to the Option Agreements, *see* Exhibits E1 and E2, provided a schedule in which the Option Shares would vest, which did not allow any shares to vest right away.

66.     Since signing the Option Agreements, the Schlacks have realized that, even on a document this straightforward, Defendant Chheda snuck in 1,000 additional shares of stock (the numbers in the vesting schedule sum to 1,000 more shares than agreed to in the Option Agreements). Of course, they had not previously checked his math, because they trusted him and relied on his expertise.

67.     At the time the Schlacks signed the Option Agreements, *see* Exhibits E1 and E2, they had no idea that Defendant Chheda did not intend to contribute the shares he would receive to the ES Venture Fund, as that entity had not yet been formed.

68.     In January and March, 2021, Defendant Chheda attempted to exercise Transfer LLC's option. However, Defendant Chheda's attempt was premature as ES had not yet granted the Schlacks the "Award Shares" contemplated in the Option Agreements.

69.     In late March 2021, as Willy explained in an e-mail to Defendant Chheda, *see* Exhibit F, in order to finalize the granting of shares under the EBP, ES was undergoing a 409A valuation, which is a complex process involving determining the value of the enterprise, allocating that value across the various equity classes to arrive at the fair market value ("FMV") for the common stock, and then applying a discount to the FMV to take into account that the stock is not publicly traded.

70.     Continuing the charade that he would use the granted stock for the ES Venture Fund, on April 30, 2021, Defendant Chheda wrote Willy and said, "Is this [409A process] resolved? Need to distribute shares to people working on ESx [the ES Venture Fund]." *See* Exhibit G.  (A fact of significance later in this narrative.)

71.     In May 2021, Defendant Chheda and Willy were engaged in an ongoing dialogue about the structure of the ES Venture Fund.  In the course of an e-mail colloquy, Defendant Chheda made clear he would prefer not to be the general partner of the fund, instead suggesting identifying a third party to take that risk. *See* Exhibit H.

72.     On May 26, 2021, Willy offered to push to get the grants wrapped up so they could re-focus on the structure of a venture fund. *See* Exhibit H.

**The First Amendments**

73.     With the 409A valuation completed and a renewed sense of urgency, Willy did just that and encouraged the ES Board to complete the grants. The Board did so, and proceeded with approving the EBP that was the source of the "Award Shares" contemplated in the Option Agreements.

74.     At that time, however, the ES Board changed the vesting schedule (including percentages, dates, and valuations at which shares would vest), which changed the number of award shares that would be made at that time to the Schlacks out of the reserve established in the December 2020 Action by Unanimous Consent and Exhibit H.  S*ee* Exhibit I.

75.     Upon learning that the Schlacks would be granted less shares than contemplated in the Option Agreements, Defendant Chheda refused to approve the EBP (in his capacity as an ES director) until the Schlacks agreed to amend the Option Agreements to reflect that he would have the option to purchase fifty percent of the shares ***immediately***.

76.     Defendant Chheda then had his attorney, Mr. Moldave, draft an amendment to the Option Agreements to reflect the change in the total amount of Award Shares and the new vesting schedule.

77.     On or about June 16, 2021, Defendant Chheda emailed a draft of the amendment to the Schlacks. The draft amendment incorrectly listed the total number of shares that would be transferred from the Schlacks to Transfer LLC as double what it should have been.  *See* Exhibits J1 and J2. In short, while Defendant Chheda had an agreement to obtain one-third of the Schlacks' award shares, he attempted to grab two-thirds of those shares through this misrepresented amendment.

78.     Willy responded to Defendant Chheda and pointed out this error. *See* Exhibit K.

79.     Defendant   Chheda   then   sent   revised   amendments   ("First Amendments") to the Schlacks, which had the correct number of shares but also allowed some of the Option Shares to vest immediately, so Defendant Chheda could purchase them right away.  Exhibits L1 and L2.

80.     The First Amendments were executed on June 16, 2021.

81.     Then, once the First Amendments were signed, Defendant Chheda finally joined his fellow board members in adopting and approving the necessary changes to the EBP (the "EBP Approval"). *See* Exhibit I.  Defendant Chheda did this again without disclosing to the Board that Defendant Chheda had a personal interest in the transactions at issue.

## Defendant Chheda Gets Some Shares

82.     On June 30, 2021, the Schlacks and Defendant Chheda executed stock transfer agreements that transferred the immediately vested shares of ES common stock from the Schlacks to Transfer LLC. *See* Exhibits M1 and M2.

83.     At the time the Schlacks signed the First Amendment, they had no idea Defendant Chheda did not intend to contribute the shares he received to the ES Venture Fund, as that entity had not yet been formed and the parties were continuing to discuss the structure of the fund.  Certainly, Defendant Chheda never disavowed his earlier commitments.

84.     To the contrary, in this time period, Romulus employees were reporting to Willy and assisting him with identifying and making venture investments.  Willy relied on Defendant Chheda's statements that he would use the transferred shares to compensate these individuals—especially since Romulus employees were not

receiving any other form of compensation from ES (as opposed to Romulus, which was certainly paying them) for their time.

**TKF Venture Fund**

85.     Between June 2022 and October 28, 2022, the Schlacks, ES, and Defendant Chheda reached an agreement around structure and formed TKF II LP ("TKF"), the embodiment of the ES Venture Fund.  At that time, the parties agreed to contribute cash to the enterprise.  The TKF agreement does not mention utilizing shares of ES stock at all.

86.     Despite this, Defendant Chheda never once disavowed his earlier commitment to using the shares of stock that he would receive from the Schlacks transfer of EBP shares for the benefit of the ES Venture Fund.

87.     Instead, as noted above, Romulus had an average of four people—at any given time—assisting Willy with venture capital investments.  In this context, Willy reasonably relied on Defendant Chheda's promise to use transferred ES shares to compensate these people.

**The Second Amendments**

88.     When the Board again changed the vesting dates (although not the vesting percentages) for the EBP stock, the Schlacks agreed to consider another amendment to the Option Agreements, bringing the two into parity.

89.     Because of the change in the vesting schedule, on or about September 16, 2022, Defendant Chheda emailed the Schlacks and asked if they would consent to changing the "date in final [paragraph] of [the First Amendments] to Dec 31, 2024." *See* Exhibit N. Defendant Chheda attached the First Amendments to this email.

90.     Willy responded and asked Defendant Chheda "don't we need board consent to change the date?" Defendant Chheda replied "No, we are just amending the date in the amendment from June to Dec (to match the date Trevor mentioned)." *See* Exhibit O. Trevor Schauenberg was ES's Chief Financial Officer at that time.

91.     Defendant Chheda then forwarded the above emails with the Schlacks to his attorney, Mr. Moldave, and asked "can you draft? Should just be a one line amendment, thanks!" *See* Exhibit O.

92.     Mr. Moldave sent back a draft of the amendments, but expressed some confusion regarding Defendant Chheda's request, stating "I am confused a little by 'changing date in final [paragraph] of [the First Amendments] to Dec 31 2024' without saying anything about the two March 31 dates.  I would have though[t] it makes sense to move the March dates also, so I did that (moving them to September), but please clarify if you want something different." *See* Exhibit O.

93.     On September 19, 2022, Defendant Chheda forwarded the draft amendment to the Schlacks and stated "FYI - just changing three dates, sent via docusign." Willy responded, again voicing concern about ES Board approval, stating "Doesn't this depend on the board agreeing to those dates?" *See* Exhibit O.

94.     On or about December 15, 2022, Defendant Chheda emailed the Schlacks regarding the amendment, stating "…only change is to match new dates." *See* Exhibit P. Thereafter, Defendant Chheda sent the amendments to the Shlacks via DocuSign, and the Schlacks executed the amendments (the "Second Amendments") on or about December 16, 2022. *See* Exhibits Q1 and Q2.

95. Unbeknownst to the Schlacks, the Second Amendments did not "only change … to match new dates." Instead, rather than changing the dates of the vesting schedule—as Defendant Chheda repeatedly represented—the Second Amendment improperly doubled the number of shares of ES common stock.

96. Doubling the shares meant Defendant Chheda would receive two-thirds of the Schlacks' Award Shares.

97. This was entirely inconsistent with the parties' agreement to give Defendant Chheda the option to purchase 33% of the Schlacks' Award Shares to Transfer LLC.

98. This also was entirely inconsistent with the ES Board's original approval of the concept of lifting transfer restrictions on a much smaller number of shares for each of Willy and Jabbok Schlacks.

99. The Schlacks did not catch this discrepancy because they relied on Defendant Chheda as an expert in forming, funding, and operating a venture capital fund (for which they understood these shares would be used), and a person who repeatedly asserted that the only change in the Second Amendments was the vesting dates in the last paragraph.

100. The Schlacks also did not catch this discrepancy because the "correct" number of shares was not immediately apparent on the face of the Second Amendments due to the fact that Jabbok and Willy Schlacks received individual documents to sign that had what was approximately the correct aggregate total for the two of them but in combination was double the amount.

101.     Additionally, Defendant Chheda sent the Second Amendments to the Schlacks via DocuSign and organized the pages in such a way that the signature page appeared ***before*** the page listing the increased share amounts, which further obscured the discrepancy.

102.     And, again, Defendant Chheda had not disavowed his commitment to using these shares in furtherance of work done by Romulus employees for the ES Venture Fund.

103.     Plaintiffs have confirmed that none of the individuals who were doing venture capital related work for Willy before TKF was founded ever received any of the transferred ES shares that Defendant Chheda has obtained.

104.     In reality, of course, that is because Defendant Chheda intended to sell them for his own personal gain and **not use them** for the ES Venture Fund at all (indeed, on information and belief, he secretly already has transferred or sold his rights to these shares).

**Defendant Chheda Attempts to Exercise**

105.     On or about January 1, 2024, over a year after Defendant Chheda proposed the Second Amendments, he contacted the Schlacks and ES's general counsel and represented for the first time that he was entitled to purchase two-thirds of the Shlacks' Award Shares, assuming the vesting conditions are met. *See* Exhibit R.

106.     On or about February 14, 2024, Defendant Chheda emailed the Schlacks and ES's general counsel and represented that "…pursuant to Amendment No. 2 to both Option Agreements, dated December 16, 2022, [the remaining] option shares

vested on June 17, 2021 … in each Option Agreement…. The exercise notice yesterday requested Willy's and Jabbok's wiring instructions so that [Transfer LLC] could wire the purchase funds for its exercise to purchase [the remaining option shares] from Willy and … Jabbok." *See* Exhibit S.

107. Thus, Defendant Chheda represented that he was entitled to purchase a total of two-thirds of the Award Shares from the Schlacks.

**Defendant Chheda Files a Frivolous Arbitration Demand**

108. On or about May 22, 2024, Defendant Chheda lodged an arbitration demand with Judicial Arbitration and Mediation Services ("JAMS") on behalf of RC Opportunity LLC and Transfer LLC against the Schlacks and two entities, TKF II GP LLC and TKF II L.P., (the "Arbitration Demand"). *See* Exhibit T.

109. In the Arbitration Demand, Defendant Chheda makes the patently false allegation that the Schlacks ***agreed*** after detailed negotiations to increase the number of option shares such that Transfer LLC would receive two-thirds of the Schlacks' Award Shares.

110. Additionally, Defendant Chheda lodged the Arbitration Demand despite the fact that there is ***no arbitration clause in the Option Agreements***. Defendant Chheda instead points to an unrelated contract that does not involve the Schlacks or Transfer LLC, but does include an arbitration clause.

111. Defendant Chheda has also pressed forward with the Arbitration Demand despite the U.S. Supreme Court's decision in *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1194–95 (2024), in which the Court held that, when "parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either

explicitly or implicitly sending arbitrability disputes to the courts—*a court must decide which contract governs*." (emphasis added).

<u>**COUNT I**</u>
**<u>(Against Defendants Chheda and Transfer LLC)</u>**
**Declaratory Judgment—Void Option Agreements**
**and Subsequent Amendments**
**Due to Fraudulent Misrepresentation**

112.    Plaintiffs incorporate and re-allege the factual allegations set forth in the paragraphs 1-111 of this Complaint as if fully set forth herein.

113.    Defendant Chheda initially convinced the Schlacks to start a venture fund and use stock they would receive from the EBP to fund it.  He even prepared a PowerPoint presentation showing that ES stock would go to the Schlacks and an entity called Longview, which was the precursor to the ES Venture Fund. *See* Exhibit A3.

114.    Even after he had documents prepared under which the Schlacks would transfer one-third of their EBP shares to Transfer LLC—an entity he would own and control—Defendant Chheda insisted the stock was to compensate people working on behalf of the ES Venture Fund.

115.    Even through the First Amendments, Defendant Chheda continued to insist that it was his intent to use the EBP stock he was receiving on behalf of the ES Venture Fund.

116.    Defendant Chheda knew these statements were false, as he actually intended to keep the shares himself and profit from them.  Indeed, upon information and belief, he has since sold those shares—even though he does not have possession

of all of the stock reflected by the options in the Option Agreements, the First Amendments, and the Second Amendments.

117. Defendant Chheda intended that the Schlacks would rely on his ongoing misrepresentations in order to ensure that they ultimately transferred the remaining EBP stock under the Option Agreements to him.

118. The Schlacks in fact reasonably (in light of Defendant Chheda's expertise on venture capital issues as described throughout this Complaint) relied on Defendant Chheda's repeated false statements and, as a result, signed the First and Second Amendments.

119. The Schlacks signed the First and Second Amendments, unaware that Defendant Chheda's representations were false.

120. Defendant Chheda's misrepresentation proximately injured the Schlacks when they signed the First and Second Amendments, which granted Defendant Chheda twice as many shares as the parties had intended.

121. A plaintiff in a common law fraud case may also recover punitive damages if the offensive act is "outrageous because of the defendant's evil motive or reckless indifference to the rights of others." *Williams v. Fin. Plaza, Inc.*, 78 S.W.3d 175, 183 (Mo. Ct. App. 2002).

122. Defendant Chheda intentionally misrepresented that he would use the shares he was to receive from the Schlacks to support the ES Venture Fund. Instead, he recklessly and immorally intended to use them for his own personal financial gain

(or that of his close family members), in reckless indifference to the expectations of the Schlacks.

123.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment of this Honorable Court, pursuant to 28 U.S.C. §§ 2201 and 2202.

124.    This Honorable Court has the power to declare the Option Agreements and the subsequent First and Second Amendments void due to fraudulent misrepresentation and to award punitive damages.

<u>**COUNT II**</u>
**(Against Defendants Chheda and Transfer LLC)**
**Declaratory Judgment—Void Second Amendments**
**Due to Fraudulent Misrepresentation**

125.    Plaintiffs incorporate and re-allege the factual allegations set forth in paragraphs 1-111 of this Complaint as if fully set forth herein.

126.    On September 16, 2022, Defendant Chheda made a false, material misrepresentation in an email to the Schlacks, stating: "we are just amending the date in the amendment from June to Dec (to match the date Trevor mentioned)," referring to the Second Amendments. *See* Exhibit N.

127.    On September 19, 2022, Defendant Chheda made a false, material misrepresentation in an email to the Schlacks, stating: "FYI - just changing three dates," referring to the Second Amendments. *See* Exhibit O.

128.    On December 1, 2022, Defendant Chheda made a false, material misrepresentation in an email to the Schlacks, stating: "only change is to match new dates," referring to the Second Amendments. *See* Exhibit P.

129. Defendant Chheda knew these statements were false, as he doubled the number of shares the Schlacks were granting him in the Second Amendments.

130. Defendant Chheda intended that the Schlacks would rely on his misrepresentation by signing the Second Amendments.

131. The Schlacks in fact reasonably (in light of Defendant Chheda's expertise on venture capital issues as described throughout this Complaint) relied on Defendant Chheda's repeated false statements and, as a result, signed the First and Second Amendments.

132. The Schlacks were justified in relying on Defendant Chheda's representations because: (i) he held a position of superior knowledge and authority (indeed, his expertise) with respect to venture capital issues; (ii) the discrepancy in the number of shares was not immediately apparent on the face of the Second Amendments; (iii) and Defendant Chheda organized the pages in DocuSign in such a way that further obscured the discrepancy; and (iv) it is industry practice to actually edit the correct document when making changes and to make only the changes represented to counter-parties (or to highlight that additional changes have been made).

133. The Schlacks signed the Second Amendments, unaware that Defendant Chheda's representations were false, and that, instead, he also had doubled the number of shares he would receive.

134. Defendant Chheda's misrepresentation proximately injured the Schlacks when they signed the Second Amendments, which granted Defendant Chheda twice as many shares as the parties had intended.

135. A plaintiff in a common law fraud case may also recover punitive damages if the offensive act is "outrageous because of the defendant's evil motive or reckless indifference to the rights of others." *Williams v. Fin. Plaza, Inc.*, 78 S.W.3d 175, 183 (Mo. Ct. App. 2002).

136. Defendant Chheda intentionally misrepresented the fact that the Second Amendments doubled the shares that would be granted to him, with an immoral purpose and a reckless indifference to the rights of the Schlacks or to the December 2020 Action by Unanimous Consent that he signed which actually legally prevented the Schlacks from transferring the number of shares he sought in the Second Amendments.

137. By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment of this Honorable Court, pursuant to 28 U.S.C. §§ 2201 and 2202.

138. This Honorable Court has the power to declare the Second Amendments void due to fraudulent misrepresentation and to award punitive damages.

## COUNT III
### (Against Defendants Chheda and Transfer LLC)
### Declaratory Judgment—Void the Option Agreements
### and the Subsequent Amendments Due to Constructive Fraud

139. Plaintiffs incorporate and re-allege the factual allegations set forth in paragraphs 1-111 of this Complaint as if fully set forth herein.

140. As set forth more fully above, Defendant Chheda occupied a position of trust and—with respect to issues like starting a venture fund, structuring executive compensation, and using shares of stock to fund a venture fund—of unique authority with respect to the Schlacks such that he gained superiority and influence over them and their decision-making process on these issues.

141. "Equity does not limit the circumstances wherein a fiduciary relationship may exist but will look for those instances where a special confidence is reposed on one side with a resulting influence on the other. 'The question is always whether or not trust is reposed with respect to property or business affairs of the other.'" *Schimmer v. H.W. Freeman Constr. Co., Inc.*, 607 S.W.2d 767, 770 (Mo. Ct. App. 1980).

142. In abuse of his position of superiority and influence, particularly in the issuance of incentive options, Defendant Chheda negligently or fraudulently misrepresented his intent to contribute shares the Schlacks transferred to him either directly or indirectly into the ES Venture Fund.

143. In abuse of his position of superiority and influence, particularly in the issuance of incentive options, Defendant Chheda also presented a version of the Second Amendments to the Schlacks that either negligently or fraudulently doubled the number of shares the Schlacks were granting Defendant Chheda.

144. At the same time, Defendant Chheda misrepresented to Plaintiffs that he was merely changing the vesting date on the options—covering up the fact that he had made substantive changes by doubling the number of shares he was to receive.

145.    Because of this constructive fraud, the Court can impose a constructive trust on all of the shares that remain unvested at the time of the Second Amendments.    Under this trust, the shares would be held for their true beneficiaries—the Schlacks.

146.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment of this Honorable Court, pursuant to 28 U.S.C. §§ 2201 and 2202.

147.    This Honorable Court has the power to declare the Option Agreements and the First and Second Amendments void due to constructive fraud or, in the alternative, impose a constructive trust on all of the shares that remain unvested at the time of the Second Amendments.

### COUNT IV
### (Against Defendants Chheda and Transfer LLC)
### Declaratory Judgment—Void the Option Agreements
### and Subsequent Amendments Under the Anti-Fraud
### Provisions of Missouri and Federal Securities Laws

148.    Plaintiffs incorporate and re-allege the factual allegations set forth in paragraphs 1-111 of this Complaint as if fully set forth herein.

149.    Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), makes it illegal to make a false statement in connection with the purchase or sale of a security.

150.    Missouri Revised Statutes Section 409.5-501, which was patterned off of Section 10(b), also makes it illegal to make a false statement in connection with the purchase or sale of a security.

151.    It is well recognized that a false statement made in connection with an option contract is considered "in connection with" the purchase or sale of a security for purposes of liability under the anti-fraud provisions of the securities laws.

152.    It also is well recognized that a false statement made after a contract for the sale of securities is entered into, but while the contract remains executory, is a violation of the anti-fraud provisions of the securities laws as if it were made in connection with the original contract.

153.    The remedy for a violation of the anti-fraud provision of the securities laws is to void the agreement in its entirety.

154.    In or about November 2020, Defendant Chheda made repeated oral representations that ES stock transferred by the Schlacks would be used for the ES Venture Fund.

155.    On or about December 2, 2020, Defendant Chheda sent a draft of an option agreement to Willy, proposing that the Schlacks would transfer one-third of the shares that would be granted in the EBP to Defendant Chheda himself or an entity he controlled that would not be actually part of the ES Venture Fund. *See* Exhibits B1-B3.

156.    In or about December 2020, Willy Schlacks asked Defendant Chheda how the option shares would be used to fund the ES Venture Fund.  Defendant Chheda told Willy Schlacks that he should trust him, though the Schlacks were not initially committed to the idea of transferring shares to an entity formally outside of or unconnected with the ES Venture Fund.

157.    At the same time, Defendant Chheda never corrected the false promise that he had made in his PowerPoint presentation to the ES Board that he would use the transferred shares for the ES Venture Fund. *See* Exhibit A3.

158.    On or about June 16, 2021, Defendant Chheda emailed a draft of the First Amendments to the Schlacks, incorrectly listing the total number of shares that would be transferred from the Schlacks to Transfer LLC, in an attempt to gain more shares than entitled to. See Exhibits J1 and J2.

159.    On September 16, 2022, Defendant Chheda represented in an email to the Schlacks that: "we are just amending the date in the amendment from June to Dec (to match the date Trevor mentioned)," referring to the Second Amendments. *See* Exhibit N.

160.    On September 19, 2022, Defendant Chheda represented in an email to the Schlacks that: "FYI - just changing three dates," referring to the Second Amendments. *See* Exhibit O.

161.    On December 15, 2022, Defendant Chheda represented in an email to the Schlacks that: "only change is to match new dates," referring to the Second Amendments. *See* Exhibit P.

162.    Defendant Chheda made materially false statements as to the actual changes to the Second Amendments. Rather than merely changing the dates, the Second Amendments doubled the shares Defendant Chheda would receive.

163.    Defendant Chheda's material misrepresentations were motivated by his desire to obtain more ES stock. As early as 2020, Defendant Chheda developed a

scheme to grant himself more ES stock. As an ES board member, Defendant Chheda knew the number of shares that the Schlacks were able to transfer to him without restriction. Despite this explicit knowledge, he repeatedly attempted to obtain more shares than the ES Board and shareholders had approved. In a final, and successful, attempt to gain more shares, Defendant Chheda knowingly misrepresented the changes to the Second Amendments in order to induce the Schlacks to sign.

164. Defendant Chheda made these material misrepresentations in connection with the Second Amendments. These false statements made in connection with the Second Amendments—statements that affected the unexecuted portions of the Options Agreement—are actionable as if they were made in connection with the Option Agreements.

165. The Schlacks relied on Defendant Chheda's misrepresentations in signing the Second Amendments. Defendant Chheda held a position of superior knowledge and authority with respect to venture capital issues. Given this position, the Schlacks believed Defendant Chheda's representations to be true and relied upon these representations. The Schlacks would not have signed the Second Amendments and would have asked that the number of shares be corrected were it not for Defendant Chheda's false statements.

166. As a result of the materially false statements, the Schlacks were proximately injured when they signed the Second Amendments, which granted Defendant Chheda twice as many shares as the parties had intended.

167.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment of this Honorable Court, pursuant to 28 U.S.C. §§ 2201 and 2202.

168.    This Honorable Court has the power to declare the Option Agreements and the First and Second Amendments void under the anti-fraud provisions of Missouri and federal securities laws.

**COUNT V**
**(Against Defendants Chheda and Transfer LLC)**
**Declaratory Judgment—Void the Second Amendments**
**Due to Negligent Misrepresentation (in the alternative)**

169.    Plaintiffs incorporate and re-allege the factual allegations set forth in paragraphs 1-111 of this complaint as if fully set forth herein.

170.    On September 16, 2022, Defendant Chheda represented in an email to the Schlacks that: "we are just amending the date in the amendment from June to Dec (to match the date Trevor mentioned)," referring to the Second Amendments. *See* Exhibit N.

171.    On September 19, 2022, Defendant Chheda represented in an email to the Schlacks that: "FYI - just changing three dates," referring to the Second Amendments. *See* Exhibit O.

172.    On December 15, 2022, Defendant Chheda represented in an email to the Schlacks that: "only change is to match new dates," referring to the Second Amendments. *See* Exhibit P.

173.    Defendant Chheda should have known that these representations were false at the time they were made because the Second Amendments doubled the shares he would receive.

174.    Defendant Chheda had a duty to exercise reasonable care in drafting the Second Amendments.

175.    Reasonable care is commonly understood as requiring a party to ensure that they are editing the correct document.

176.    Defendant Chheda had a heightened duty of care based on his position of superior knowledge and authority (indeed, his expertise) with respect to venture capital issues.

177.    Defendant Chheda failed to exercise reasonable care in making these false representations to the Schlacks because he failed to correct his lawyer, who appears to have used the original (incorrect) draft of the First Amendments—which, as set out above, Willy Schlacks had to correct—to calculate the number of shares that Defendant Chheda would receive in the Second Amendments, based on the ES stock split that occurred after the First Amendments.

178.    Defendant Chheda made these false representations for the purpose of providing guidance to the Schlacks with respect the Second Amendments and to induce them into signing the Second Amendments.

179.    The Schlacks believed Defendant Chheda's representations to be true and relied upon these representations, and were thereby induced into signing the

Second Amendments, unaware that they doubled the number of shares Defendant Chheda would receive.

180. The Schlacks were justified in relying on Defendant Chheda's representations because: (i) he held a position of superior knowledge and authority (indeed, his expertise) with respect to venture capital issues; (ii) the discrepancy in the number of shares was not immediately apparent on the face of the Second Amendments; (iii) and Defendant Chheda organized the pages in DocuSign in such a way that further obscured the discrepancy; and (iv) it is industry practice to actually edit the correct document when making changes and to make only the changes represented to counter-parties (or to highlight that additional changes have been made).

181. Defendant Chheda's false representations proximately injured the Schlacks when they signed the Second Amendments, which granted Defendant Chheda twice as many shares as the parties had intended.

182. By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment of this Honorable Court, pursuant to 28 U.S.C. §§ 2201 and 2202.

183. This Honorable Court has the power to declare the Second Amendments void due to negligent misrepresentation.

**COUNT VI**
**(Against Defendants Chheda and Transfer LLC)**
**Declaratory Judgment—Void the Option Agreements**
**And Subsequent Amendments for Lack of Consideration**

184.    Plaintiffs incorporate and re-allege the factual allegations set forth in paragraphs 1-111 of this Complaint as if fully set forth herein.

185.    The Option Agreements and the Second Amendments to the Option Agreements are void because Defendant Chheda gave no consideration for the underlying option contracts.

186.    Under Delaware law, consideration is either a benefit to the promisor or a detriment to the promisee.  One cannot give up something one does not have or claim to take on a burden one is already lifting.

187.    Defendant Chheda neither gave up anything nor took on a duty he did not already have in exchange for the original Option Agreements. Indeed, he proposed the Option Agreements in conjunction with launching the ES Venture Fund—but in doing so, (as we know now) he took on no obligation to donate the shares to the ES Venture Fund nor did he give anything up, as the ES Venture Fund had not been formed and did not require Defendant Chheda to do anything.

188.    At best, Defendant Chheda promised consideration (using the shares to benefit the ES Venture Fund) that he never intended to deliver, even when he told Willy, who had asked about the omission of a commitment to use the shares in that manner, to "trust" him.

189.    Recognizing he was giving nothing for the assignment of these shares, on December 26, 2020, in an e-mail with Willy, Defendant Chheda acknowledged that there were no performance or success triggers in the Option Agreements—although he agreed there should be in the future. *See* Exhibit U. In other words, Defendant

Chheda, by his own admission, was getting options to purchase shares in ES without having to do anything contractually in order to earn them.

190.    Then, with respect to the Second Amendments, other than a bald recital of consideration, Defendant Chheda neither promised something of value to the Schlacks nor gave up anything to his detriment in exchange for the Schlacks purportedly ***doubling*** the number of options they were prepared to give him. And it is clear, under Delaware law, that courts will not find "consideration [to be] present merely because a recital in the contract piously proclaimed that it was." *Gottlieb v. Heyden Chem. Corp.*, 33 Del. Ch. 82, 89 (1952).

191.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment of this Honorable Court, pursuant to 28 U.S.C. §§ 2201 and 2202.

192.    This Honorable Court has the power to declare the Option Agreements and the First and Second Amendments void for lack of consideration.

<u>**COUNT VII**</u>
**(Against Defendants Chheda and Transfer LLC)**
**Declaratory Judgment—Void The Second Amendments**
**Due to Mutual Mistake (in the alternative)**

193.    Plaintiffs incorporate and re-allege the factual allegations set forth in paragraphs 1-111 of this Complaint as if fully set forth herein.

194.    The Second Amendments are void because the parties intended and assumed that the Second Amendments granted Defendant Chheda the option to purchase 33 percent of the Schlacks' EBP Award Shares, when in fact the Second

Amendments granted Defendant Chheda the option to purchase approximately 66 percent of the Schlacks' EBP Award Shares.

195.    Under Delaware law, a contract is voidable on the grounds of mutual mistake existing at the time of contract formation when (i) both parties were mistaken as to a basic assumption, (ii) the mistake materially affects the agreed-upon exchange of performances, and (iii) the party adversely affected did not assume the risk of the mistake. *Lehman Bros. Holdings, Inc. v. Kee*, 268 A.3d 178, 191 n.95 (Del. 2021).

196.    As memorialized in the First Amendments, the parties agreed Defendant Chheda had the option to purchase 33 percent of the EBP Award Shares.

197.    Defendant Chheda repeatedly represented to the Schlacks that the sole purpose of the Second Amendments was to change the vesting dates in the last paragraph.

198.    The parties never discussed that the Second Amendments would increase the percentage of EBP Award Shares granted to Defendant Chheda.

199.    The parties were aware that under the December 2020 Action by Unanimous Consent (and attached agreements), the Schlacks could each transfer only a very specific number of ES common stock to Defendant Chheda. *See* Exhibit C.

200.    Defendant Chheda's attorney drafted the Second Amendments.

201.    The parties mistakenly assumed that the Second Amendments would grant Defendant Chheda the option to purchase 33 percent of the Schlacks' EBP Award Shares.

202.     However, due to either a miscalculation or drafting error by Defendant Chheda's attorney, the Second Amendments granted Defendant Chheda the option to purchase approximately 66 percent of the Schlacks' EBP Award Shares.

203.     This mistake materially affects the parties' agreed-upon exchange of performances because the Second Amendments grant Defendant Chheda the right to purchase twice as many shares as the parties agreed.

204.     The Schlacks did not assume the risk of this mistake because: (i) Defendant Chheda assured the Schlacks that the only change in the Second Amendments was the vesting dates in the last paragraph; (ii) the Schlacks relied on Defendant Chheda based on his position of superior knowledge and authority (indeed, his expertise) with respect to venture capital issues; (iii) the discrepancy in the percentage of shares was not immediately apparent on the face of the Second Amendments; (iv) the pages of the Second Amendments were organized in DocuSign in such a way that further obscured the discrepancy; and (v) it is industry practice to actually edit the correct document when making changes and to make only the changes represented to counter-parties (or to highlight that additional changes have been made).

205.     By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment of this Honorable Court, pursuant to 28 U.S.C. §§ 2201 and 2202.

206.     This Honorable Court has the power to declare the Second Amendments void due to mutual mistake.

## COUNT VIII
### (Against Defendants Transfer LLC and RC Opportunity)
### Stay of Arbitration

207.     Plaintiffs incorporate and re-allege the factual allegations set forth in paragraphs 1-111 of this Complaint as if fully set forth herein.

208.     Section 4 of the Federal Arbitration Act requires a court to decide questions about the formation or existence of a purported arbitration agreement. *See, e.g., Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99 (3d Cir. 2000). Federal courts have the power to stay or enjoin arbitration while they determine these "gateway" questions as to whether a valid agreement to arbitrate actually exists. *See, e.g., MZM Construction Co., Inc. v. New Jersey Building Laborers Statewide Benefit Funds*, 974 F.3d 386 (3d Cir. 2020).

209.     In his Arbitration Demand, Defendant Chheda claimed that the Schlacks breached the Options Agreement. Specifically, he alleges, "2020LLC also seeks damages for breach of contract against the Schlacks …" for failing to deliver the "Option Shares" as required by the Option Agreements. He also seeks specific performance of the Options Agreement and its amendments. *See* Exhibit T.

210.     Neither the Option Agreements nor their amendments have an arbitration provision.  As a result, the only implied forum for disputes about their performance is a federal or state court, since arbitration is a creature of contract.

211.     Nevertheless, Defendant Chheda attempted to bootstrap his breach of contract claim to an arbitration provision in an unrelated limited partnership agreement, the TKF Agreement.

212.    The Option Agreements govern this dispute and when a contract dispute arises without an arbitration provision, "the court should decide that question." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995).

213.    Defendant Chheda's Arbitration Demand wrongly claims that the question of arbitrability should be resolved by the arbitrator, invoking an agreement that does not mention the Schlacks transferring stock at all—and to which the parties to the stock transfer are not parties.

214.    On May 24, 2024, the United States Supreme Court held that, "[w]here parties have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs." *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1189 (2024).

215.    Accordingly, even if the Option Agreements and their amendments AND the unrelated agreement containing an arbitration clause all apply here (and they do not), the Court should issue a stay of arbitration to allow this court to decide whether the disputes in the Arbitration Demand are, in fact, arbitrable.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court to enter a judgment:

(a)    declaring the Option Agreements and First and Second Amendments, or, alternatively, the Second Amendments, void *ab initio*;

(b)    alternatively, imposing a constructive trust on all of the shares that remain unvested at the time of the Second Amendments;

| (c) | awarding Plaintiffs punitive damages; |
|-----|----------------------------------------|
| (c) | declaring the Option Agreements control the issue of arbitrability; |
| (d) | staying the arbitration; and |
| (e) | granting such other and further relief as the Court may deem equitable and just. |

Dated:    July 26, 2024                Respectfully submitted,

_/s/ Scott R. Ast_

| Scott R. Ast | MO # 51699 |
|--------------|------------|
| Michele F. Sutton | MO # 57942 |

**SCHARNHORST AST
KENNARD GRIFFIN PC**
1100 Walnut, Suite 1950
Kansas City, Missouri 64106-2143
Telephone:  (816) 268-9400
Facsimile:  (816) 268-9409
E-mail:        sast@sakg.com
                    msutton@sakg.com

Vincent P. (Trace) Schmeltz, III
*(admitted pro hac vice)*
**BARNES & THORNBURG LLP**
One N. Wacker Drive, Suite 4400
Chicago, Illinois 60606
Telephone:  (312) 214-5602
Facsimile:  (312) 759-5646
Email:        tschmeltz@btlaw.com

*Counsel for Plaintiffs*