IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JABBOK SCHLACKS, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 2:24-CV-04118-BCW |
| NEIL CHHEDA, et al., | ) |
| Defendants. | ) |

# ORDER

Before the Court are Plaintiffs' motion for preliminary injunction (Doc. #16), motion for permanent injunction (Doc. #36), and Defendants' motion to compel arbitration (Doc. #21). The Court, being duly advised of the premises, denies all said motions.

## BACKGROUND

Plaintiffs Jabbok and William Schlacks are brothers who are executive officers of EquipmentShare.com, Inc. ("ES") and hold significant shares of ES. (Doc. #8). Plaintiffs had a business relationship with Defendant Neil Chheda ("Chheda"). Along with being a director at ES, Chheda is also the primary manager and representative to Defendants Schlacks 2020 Transfer, LLC, ("Transfer") and RC Opportunity, LLC ("RC"). (Doc. #8). With the ES Board of Director's permission, Chheda created a plan to create an ES Venture Fund that would be funded under an Equity Bonus Plan ("EBP"). On December 31, 2020, Plaintiffs individually entered into option agreements with Transfer that originally would give Transfer the option to acquire one-third of the shares that Plaintiffs would individually receive through the EBP. (Docs. #8-9 & #8-10). The option agreements did not specify a service that Transfer had to provide to the ES Venture Fund, only stating that Transfer would provide "services" to ES as a company. Ids. Plaintiffs concede

1

that the option agreements have no written obligations to support the ES Venture Fund. (Doc. #8 at 11). Plaintiffs each signed their respective option agreement and Chheda signed both option agreements on behalf of Transfer.

The parties made and signed two amendments to the option agreements. The first amendment lowered the amount of shares Transfer would be able to receive but made half of those shares vest immediately so Transfer could purchase them right away. (Docs. #8-18 & 8-19). The second amendment changed certain dates in the option agreements to be more aligned with the ES Board of Directors' vesting schedule and doubled the amount of shares Transfer would receive. (Docs. #8-25 & #8-26). Plaintiffs argue that despite signing the second amendment, they did not know nor agree to the second amendment doubling Transfer's option shares. (Doc. #8).

During the course of the Parties' business relationship, the ES Venture Fund resulted in forming the limited partnership TKF II L.P. ("TKFLP"). The partners of TKFLP are made up of companies managed or represented by Plaintiffs and/or Chheda.[1] (Doc. #22-2). Defendant RC is one of the limited partners in TKFLP but Defendant Transfer is not a partner in TKFLP. TKFLP is governed by its Limited Partnership Agreement ("LPA"). The LPA contains an arbitration clause which states the following:

> Any claim, dispute or controversy of whatever nature arising out of or relating to this Agreement, including, without limitation, any action or claim based on tort, contract, or statute (including any claims of breach), or concerning the interpretation, effect, termination, validity, performance and/or breach of this Agreement or any conflict of interest between the General Partner and the Partnership ("Controversy") shall be settled by arbitration pursuant to this section. . . . To the extent the parties either are not able to meet or otherwise are not able to resolve the Controversy within the time stated (unless extended by mutual agreement), such Controversy shall be determined by binding arbitration under and pursuant to JAMS' Streamlined Arbitration Rules[.]

---

[1] TKFLP's general partners are TKF II GP, LLC ("TKFLLC") (of which Plaintiffs manage) and ES (of which Plaintiffs and Chheda are directors). (Doc. #22-2). TKFLP's limited partners are Arken (owned by Plaintiffs) and RC (owned by Chheda).

2

(Doc. #22-1 at 73). Rule 11(b) of JAMS Arbitration Rules states the following:

> Jurisdictional and arbitrability disputes including disputes over the formation, existence, validity, interpretation, or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

The LPA is binding on the partners of TKFLP and among others, their personal or legal representatives, but adds that "the provisions herein relating to contribution of capital to the Partnership are for the benefit of the Partners only, and not for the benefit of any third party. Nothing expressed or referred to in this Agreement shall be construed to give any Person other than the parties to this Agreement any legal or equitable right, remedy or claim under or with respect to this Agreement or any provision of this Agreement[.]" Id.

In February 2024, Transfer attempted to exercise its right to purchase its vested option shares under the terms of the option agreements and amendments. (Doc. #8). However, Plaintiffs refused to tender the shares, challenging the validity of the parties' respective option agreements and amendments due to what Plaintiffs allege as misrepresentations made by Chheda. Id. On May 22, 2024, because of Plaintiffs' alleged breach of the option agreements, Chheda, Transfer and RC (collectively "Defendants") filed for arbitration with JAMS pursuant to the LPA, arguing that Plaintiffs' refusal to comply with the option agreements is based on Plaintiffs' belief that the option shares belong to TKFLP. (Doc. #22). On July 10, 2024, Plaintiffs filed the instant action in this Court. (Doc. #1).

On September 5, 2024, Plaintiffs filed their motion for preliminary injunction to enjoin the JAMS arbitration proceeding. (Doc. #16). On September 19, 2024, Defendants filed their motion for order to compel arbitration and for a stay pending arbitration. (Doc. #21). On September 27,

3

2024, Defendants filed a motion to dismiss for failure to state a claim.[2] (Doc. #27). On October 8, 2024, Plaintiffs filed a subsequent motion for permanent injunction and expedited ruling on their preliminary injunction motion. (Doc. #36). On November 19, 2024, the Court heard oral arguments regarding Plaintiffs' motions for injunctive relief and Defendants' motion to compel arbitration. (Doc. #59).

## LEGAL STANDARD

"Whether a preliminary injunction should [be] issue[d] involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other part[y] litigant[s]; (3) the probability that movant will succeed on the merits; and (4) the public interest." Dataphase Sys. v. C L Sys., 640 F.2d 109, 113 (8th Cir. 1981). "A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted).

Additionally, when reviewing a motion to compel arbitration, a district court asks only (1) whether a valid agreement to arbitrate exists between the parties and (2) whether the specific dispute falls within the scope of that agreement. Robinson v. EOR-ARK, LLC, 841 F.3d 781, 783–84 (8th Cir. 2016); Donaldson Co., Inc. v. Borroughs Diesel, Inc., 581 F.3d 726, 729 (8th Cir. 2009) ("A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties.") (citations omitted). State contract law governs whether the parties have entered into a valid arbitration agreement. Robinson, 841 F.3d at 784. In Missouri, a valid contract requires an offer, acceptance, and consideration. Baker v. Bristol Care, Inc., 450 S.W.3d 770, 774 (Mo. 2014).

---

[2] The Court shall consider this motion in a separate order.

The party seeking to compel arbitration bears the burden of proving the existence of such an agreement. Ballou v. Asset Mktg. Servs., LLC, 46 F.4th 844, 851 (8th Cir. 2022); Duncan v. TitleMax of Missouri, Inc., 607 S.W.3d 243, 249 (Mo. Ct. App. 2020). "The party resisting arbitration bears the burden of showing either that the arbitration provision is invalid or that it does not encompass the claims at issue." Triplet v. Menard, Inc., 42 F.4th 868, 870 (8th Cir. 2022). Under the Federal Arbitration Act ("FAA"), any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Lyster v. Ryan's Fam. Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001).

When a motion to compel arbitration is accompanied by matters outside the pleadings, a court will evaluate the motion under a summary-judgment-like standard, viewing facts in the light most favorable to the non-moving party and drawing all reasonable inferences in their favor. Nebraska Mach. Co. v. Cargotec Sols., LLC, 762 F.3d 737, 742–43 (8th Cir. 2014). Under the FAA, if the record reveals a material issue of fact as to whether the parties agreed to arbitrate, the court shall proceed summarily to trial on that issue. Id.; 9 U.S.C. § 4. However, if a trial by jury is not demanded by the party opposing arbitration, "the court shall hear and determine such issue." 9 U.S.C. § 4.

## ANALYSIS

### I. Plaintiffs' motions for preliminary and permanent injunctions are denied.

Plaintiffs seek to enjoin the JAMS arbitration proceeding because contrary to Defendants' argument, Plaintiffs have not agreed to arbitrate the issue before the Court. (Docs. #16 & #36). The standard for issuing a preliminary or permanent injunction is essentially the same. Oglala Sioux Tribe v. C & W Enters., 542 F.3d 224, 229 (8th Cir. 2008). The Court denies Plaintiffs'

5

motions for preliminary injunction and permanent injunction of the JAMS arbitration proceeding because Plaintiffs have failed to show irreparable harm absent an injunction.

Plaintiffs argue that they will suffer an irreparable harm by being forced to arbitrate a dispute that they have not agreed to arbitrate. (Doc. #17). However, Plaintiffs are not likely to be forced to arbitrate before this Court rules on the matter regarding arbitration. Consistent with Plaintiffs' concession at the oral argument hearing, JAMS has not subjected Plaintiffs to arbitration and JAMS has noted that it will follow this Court's Order regarding arbitration once it is issued.

The main purpose for injunctive relief is to preserve the status quo and prevent irreparable harm until the Court can make a final decision on the merits. Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589, 593 (8th Cir. 1984). Plaintiffs must show that their irreparable harm will be of such imminence that there is a clear and present need for equitable relief. Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013). Here, Plaintiffs have failed to show that arbitration is so imminent that this Court will be unable to make a final decision on the merits beforehand. Therefore, Plaintiffs have failed to show it is likely to suffer an irreparable harm.

Because the absence of an irreparable harm is "an independently sufficient ground upon which to deny a preliminary injunction[,] Morehouse Enters., LLC v. BATFE, 78 F.4th 1011, 1017 (8th Cir. 2023) (citing Grasso Enters., LLC v. Express Scripts, Inc., 809 F.3d 1033, 1040 (8th Cir. 2016)), the Court does not need to consider the other preliminary injunction factors. As stated above, there will be no change in the arbitration proceeding until this Court rules on this matter. For the reasons above, Plaintiffs' motions for preliminary and permanent injunction are denied.

**II.     Defendants' motion to compel arbitration is denied.**

Defendants seek to compel arbitration, arguing that Plaintiffs have subjected themselves to arbitrate the alleged breach of the option agreements through Plaintiffs' allegation that the option

6

shares belong to TKFLP instead of Transfer. (Doc. #22). Defendants state that because Plaintiffs and Chheda, are subject to TKFLP's LPA, the arbitration agreement in the LPA governs and should be enforced. Further, Defendants argue that since the arbitration agreement has a delegation provision and agrees to follow JAMS' Arbitration Rules, the consideration of arbitrability must also be sent to an arbitrator.

Plaintiffs argue that Defendants' motion should be denied because there is no binding agreement to arbitrate between them and Transfer. (Doc. #34). Plaintiffs also argue that even if they were subjected to the LPA, the disputes in this case are outside the scope of the arbitration agreement in the LPA. Additionally, Plaintiffs argue that Transfer and Chheda cannot invoke the arbitration provision because the LPA specifically bars non-parties to the LPA from pursuing any claims that arise out of or relate to the document.

As stated above, when considering an arbitration agreement, the Court asks only (1) whether a valid agreement to arbitrate exists between the parties and (2) whether the specific dispute falls within the scope of that agreement. Robinson, 841 F.3d at 783–84. When an arbitration agreement includes a delegation provision to arbitrate threshold issues of arbitrability, the Court must first determine whether the delegation provision is valid, applying the principles as it would to arbitration agreements. Shockley v. PrimeLending, 929 F.3d 1012, 1018 (8th Cir. 2019). Therefore, as with arbitration agreements, the Court must first ask whether a valid delegation provision exists between the parties. If a valid delegation provision exists between the parties, then all further disputes regarding the arbitration agreement and other relevant issues must proceed to arbitration. Id.

A. A valid delegation provision does not exist between the parties.

Defendants argue all appropriate parties are subjected to LPA's arbitration agreement and delegation provision either directly or through agency/representation. (Doc. #22). As noted above, the LPA states that as of the initial date of its execution, the current partners subjected to its terms are: (1) TKFLLC (different from TKFLP); (2) ES; (3) Arken, LLC; and (4) RC. (Doc. #22-1 at 9 & 87). Additionally, the LPA states that its provisions are binding on the partners of TKFLP and their "heirs, executors, administrators, **personal or legal representatives**, successors and assigns of the respective parties hereto." (Doc. #22-1 at 95-6) (emphasis added). The LPA also allows authorized representatives of the partners to bind partners on matters pertaining to TKFLP. Id. at 78. The LPA expresses that Plaintiff William Schlacks is an authorized representative for TKFLLC. Id. For these reasons, Defendants argue that Plaintiffs are managing members and representatives of TKFLP, ES, and Arken such that, by agency and equitable estoppel, they are subjected to the arbitration agreement and delegation provision.

The Court finds that Plaintiffs are not parties to the arbitration agreement or the delegation provision. The arbitration agreement, including the delegation provision, is governed by Delaware law and "shall be construed to the maximum extent possible to comply with the laws of the State of Delaware." (Doc. #22-1 at 73). Since the LPA does not define the term "personal or legal representative" the Court must give the term its ordinary, common meaning. Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 738 (Del. 2006). Delaware has commonly construed the term "personal or legal representative" to mean "[a] person who manages the legal affairs of another **because of incapacity or death**, such as the executor of an estate." Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc., 36 A.3d 336, 344 (Del. 2012).

8

Here, applying the common meaning of the term, Plaintiffs cannot be personal or legal representatives of any of the partners to TKFLP because all the partners are entities that are not capable of being incapacitated or dead like a natural person. See Bird v. Wilmington Soc'y of Fine Arts, 43 A.2d 476, 495 (Del. 1945). Additionally, while Plaintiffs are "managing members" of TKFLP and Plaintiff William Schlacks is an authorized representative of the partner TKFLLC, their agency to these companies alone cannot bind them to the companies' arbitration agreement. Delaware law holds that in order to bind an agent in his personal capacity to an arbitration agreement its principal is bound to, there must be evidence of the agent's intent to be bound individually. BuzzFeed, Inc. v. Anderson, No. 2022-0357-MTZ, 2022 Del. Ch. LEXIS 308, at *21 (Ch. Oct. 28, 2022) ("Generally, an agent of a disclosed principal does not become a party to the principal's contract, even if the agent negotiated and signed the contract on the principal's behalf.").

The LPA states that authorized representatives can bind a partner but does not state that the authorized representative is personally bound by any obligation it binds a partner to in his or her official capacity. Therefore, even though William Schlacks is an authorized representative of TKFLLC and in his official capacity bound TKFLLC to the arbitration agreement and delegation provision, there is no express or implied language that William Schlacks intended to bind himself in his personal capacity to arbitrate disputes outside of his representation of TKFLLC. The same is true for Jabbok and William Schlacks as "managing members" of TKFLP. There is no evidence that managing members must be bound personally to arbitration.

The matter before the Court, and the matter pending with JAMS, involves a dispute regarding Plaintiffs' personal option agreements with Transfer. Both option agreements sought Plaintiffs' personal shares of their company ES. Neither option agreement was created in

9

Plaintiffs' official capacity for any company. Therefore, this dispute involves Plaintiffs in their personal capacity. Defendants have failed to establish that the arbitration agreement or the delegation provision of the LPA binds Plaintiffs in their personal capacity."Kuroda v. SPJS Holdings, L.L.C., Civil Action No. 4030-CC, 2010 Del. Ch. LEXIS 232, at *16 (Ch. Nov. 30, 2010).

Furthermore, equitable estoppel also does not bind Plaintiffs to the arbitration agreement or the delegation provision, because contrary to Defendants' argument, Plaintiffs have not invoked the LPA in their dispute regarding the option agreements. The Court will expand on its equitable estoppel analysis further below in the next section, but to the extent Defendants argue equitable estoppel establishes the existence of a valid delegation provision between the parties, the Court finds that argument is without merit.

The Court also finds that not all Defendants are parties to the arbitration agreement or delegation provision either. Specifically, Defendant Transfer is not a partner in TKFLP. This is significant because Transfer is the only company that is party to the option agreements with Plaintiffs that are disputed. Transfer cannot invoke the LPA to compel arbitration involving disputes of the option agreements because the LPA expressly states the provisions of the LPA are for the benefit of the partners of TKFLP only. (Doc. #22-1 at 73-4). The LPA further states that "[n]othing expressed or referred to in this Agreement shall be construed to give any Person other than the parties to this Agreement **any legal or equitable right, remedy or claim under or with respect to this Agreement or any provision of this Agreement**[.]" Id. (emphasis added). Therefore, Transfer has no legal rights under the arbitration agreement or delegation provision.

Defendant RC is a partner in TKFLP and has the authority to compel arbitration against the partners of TKFLP. Additionally, the fact that Defendant Chheda is an agent of RC and is also

10

seeking to enforce an arbitration in his personal capacity, provides evidence that Chheda intended himself as an agent to be bound by the arbitration agreement and delegation provision. BuzzFeed, Inc., 2022 Del. Ch. LEXIS at *20 (holding that when a non-signatory agent of a signatory principal seeks to compel arbitration, the non-signatory agent has shown intent to be bound also to the arbitration agreement.). However, as explained above, RC and Chheda have failed to establish that Plaintiffs are parties to the arbitration agreement and delegation provision.

For these reasons the Court finds that there is not a valid delegation provision between the parties and shall now consider the validity of the arbitration agreement as a whole. The Court's analysis regarding whether there is a valid delegation provision between the parties also applies to the Court's consideration as to whether there is a valid arbitration agreement between the parties. See Robinson, 841 F.3d at 783–84. Therefore, instead of repeating its analysis, the Court incorporates here its previous analysis above and finds that there is not a valid arbitration agreement between the parties. The Court now moves to consider in the alternative, whether the specific dispute falls within the scope of the arbitration agreement. Id.

  B. Even if there was a valid arbitration agreement between the parties, the dispute regarding the option agreements does not fall within the scope of the arbitration agreement.

The LPA expresses that the partners of TKFLP are to arbitrate "[a]ny claim, dispute or controversy . . . arising out of or relating to [the LPA], including, without limitation, any action or claim based on tort, contract, or statute (including any claims of breach)[.]" (Doc. #22-1 at 73). While this scope seems to be broad, the limiting phrase here is "arising out of or relating to" the TKFLP Limited Partnership Agreement. Id. Neither the above-captioned matter filed by Plaintiffs or the JAMS complaint filed by Defendants arise out of or relate to the LPA.

The LPA establishes how TKFLP will operate as a limited partnership. (Doc. #22-1 at 9). Therefore, the arbitration agreement subjects only disputes arising out of or relating to the operation of TKFLP. The instant case has been brought seeking declaratory judgment to void option agreements made by Plaintiffs and Transfer years before TKFLP was created. (Doc. #8). As stated above, the option agreements involve Transfer receiving options of each Plaintiff's personal shares of ES. Plaintiffs argue the option agreements should be voided because of Chheda's alleged misrepresentations, none of which involve the operation of TKFLP. Additionally, Defendants' JAMS complaint was filed because Plaintiffs refused to honor Transfer's option pursuant to the option agreements. This also does not arise out of or relate to the operation of TKFLP.

Defendants argue, both for their JAMS complaint and the instant case, that these issues are related to TKFLP through equitable estoppel. Specifically, Defendants argue that Plaintiffs made this matter relate to TKFLP by alleging that Transfer is not entitled to the option shares because the option shares were intended to be used for the benefit of TKFLP. (Doc. #22). Defendants state that because Plaintiffs make this allegation, they are relying on the terms of the LPA that expresses what property is to be contributed to TKFLP. (Docs. #22 & #22-1 at 81). For this reason, Defendants argue that since Plaintiffs are relying on the terms of the LPA for their claims and their refusal to honor the option agreements, Plaintiffs must be subjected to the arbitration clause in the LPA through equitable estoppel. Id.

Defendants' argument is unpersuasive and misleading. First, in Plaintiffs' amended complaint, they never state that the option shares were supposed to be contributed to TKFLP specifically. Plaintiffs alleged that Chheda (presumably on behalf of Transfer) promised to contribute the option shares received for the benefit of the ES Venture Fund, which did not exist

when the option agreements were entered into. (Doc. #8 at 15 & 19-20). Years later the ES Venture Fund was considered "formalized" by the creation of TKFLP, but Plaintiffs throughout their amended complaint consistently separated the ES Venture Fund as a separate entity from TKFLP.

Secondly, Plaintiffs do not express or infer that they relied on said promise based on the LPA. Plaintiffs allege that the initial promise was made before the option agreement was created, when Chheda made a presentation to the ES Board. (Doc. #8 at 3, 10, & 14). Plaintiffs allege that Chheda promised that if the board authorized additional ES shares to be given to Plaintiffs, then Plaintiffs would give a third of those shares to a company run by Chheda, which would use the option shares to benefit ES. Id. at 14. This promise is partially reflected in the option agreements that state services are to be provided to "the Company" (which is defined as ES) by the "Buyer" (which was Transfer). (Docs. #8-9 & #8-10). However, the parties agree that the option agreements did not express any written obligation to Chheda or Transfer "to support the [ES] [V]enture [F]und" specifically, only to provide services to the ES company as a whole. (Doc. #8 at 11). Regardless, neither the option agreements nor Plaintiffs' amended complaint infer that Plaintiffs were relying on the LPA, which did not exist until two years after the option agreements were entered into.

Lastly, the Court cannot reasonably infer from Plaintiffs' allegations in their complaint (or, regarding Defendants' JAMS complaint, their reasoning for not honoring the option agreement) that they are relying on the terms of the LPA. As the stated above, the terms included in the LPA govern the general and limited partners of TKFLP. Transfer is not a partner in TKFLP, nor are Plaintiffs. Contrary to Defendants' argument, this matter does not involve TKFLP or the LPA; this is a breach of contract/misrepresentation issue regarding parties to option contracts for shares of a

different company. Consequently, these issues do not fall within the scope of the arbitration agreement either.

For the reasons above, the Defendants' JAMS arbitration should be dismissed and Defendants' motion to compel arbitration in the instant action is denied. Accordingly, it is hereby

ORDERED Plaintiffs' motion for preliminary injunction (Doc. #16) is DENIED. It is further

ORDERED Plaintiffs' motion for permanent injunction (Doc. #36) is DENIED. It is further

ORDERED Defendants' motion to compel arbitration (Doc. #21) is DENIED.

IT IS SO ORDERED.

Dated: February 14, 2025 /s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT