# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

JABBOK SCHLACKS and WILLIAM
SCHLACKS,

Plaintiffs,

v.

NEIL CHHEDA and SCHLACKS 2020
TRANSFER LLC,

Defendants.

2:24-CV-04118-BCW

### DEFENDANTS NEIL CHHEDA AND SCHLACKS 2020 TRANSFER LLC'S ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND SCHLACKS 2020 TRANSFER LLC'S COUNTERCLAIMS

Defendants Neil Chheda and Schlacks 2020 Transfer LLC ("2020LLC" and together, with Mr. Chheda, the "Defendants"), by and through their counsel, answer Plaintiffs' First Amended Complaint, dated July 26, 2024,[1] in light of the Court's February 14, 2025 dismissal of six of the eight counts (the "Dismissal"), as follows:

### NATURE OF THE CASE

1.    Defendants deny the allegations in Paragraph 1, except admit that Paragraph 1 purports to quote Martha Beck.

2.    Defendants deny the allegations in Paragraph 2, except admit that Defendant Chheda operates a venture capital fund and that Paragraph 2 purports to quote an on-line description of Mr. Chheda's experience.

3.    Defendants deny the allegations in Paragraph 3.

---

[1] To the extent that Defendants use terms defined in the First Amended Complaint in this Answer, such use is not an acknowledgment or admission of any characterization that Plaintiffs seek to associate with any such defined term.

4. Defendants deny the allegations in Paragraph 4, except admit that Paragraph 4 purports to quote select passages of a published legal opinion while omitting that the court certified for immediate appeal what the court characterized as an issue that would promptly terminate the referenced litigation in Defendant Chheda's favor.

5. Defendants deny the allegations in Paragraph 5, except admit that Paragraph 5 purports to characterize litigations against Defendant Chheda that have been dismissed by the applicable courts in Defendant Chheda's favor.

6. Defendants deny the allegations in Paragraph 6, except admit that Paragraph 6 purports to characterize a litigation against Defendant Chheda that has been dismissed by the applicable court in Defendant Chheda's favor.

7. Defendants deny the allegations in Paragraph 7.

8. Defendants deny the allegations in Paragraph 8, except admit that Defendant Chheda was an architect of a plan to make investments in construction-related technology companies for the benefit of EquipmentShare.com Inc ("ES").

9. The Counts relating to the allegations in Paragraph 9 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations.

10. The Counts relating to the allegations in Paragraph 10 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations.

11. Defendants deny the allegations in Paragraph 11.

12. Defendants deny the allegations in Paragraph 12.

13. Paragraph 13 states a request for a legal remedy and thus no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 13.

14. Defendants deny the allegations in Paragraph 14.

## PARTIES

15.     Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 15, except admit that Jabbok Schlacks, at all relevant times, was the Chief Executive Officer of, a director of, and a shareholder of ES.

16.     Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 16, except admit that William Schlacks, at all relevant times, was the President of, a director of, and a shareholder of ES.

17.     Defendants deny the allegations in Paragraph 17, except admit that Defendant Chheda is a citizen of Massachusetts who resides in Weston, Massachusetts, that he founded a venture capital firm that does business as "Romulus Capital," that he leads investments in technology-enabled companies across sectors and stages, and that from 2015 to the present he has been a director at ES.

18.     Defendants deny the allegations in Paragraph 18, except admit that Transfer LLC is a Delaware limited liability company and that Defendant Chheda's children are also citizens of Massachusetts who reside in Weston, Massachusetts.

19.     Because any Counts against RC Opportunity LLC have been dismissed in the Dismissal, no response to Paragraph 19 is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 19, except admit that RC Opportunity is a Delaware limited liability company and that Defendant Chheda is its sole member and manager.

20.     Defendants admit the allegations in Paragraph 20.

## JURISDICTION AND VENUE

21.     Paragraph 21 states a legal conclusion to which no response is required.

22.     Paragraph 22 states a legal conclusion to which no response is required.

3

23.     Paragraph 23 states a legal conclusion to which no response is required.  Further answering, this dispute is subject to arbitration and therefore venue in this Court is improper.

## FACTUAL ALLEGATIONS

24.     Defendants are without knowledge or information sufficient to form a belief as to Paragraph 24, except admit that ES has developed into a successful business that offers equipment rental services in addition to telematics and fleet management solutions.

25.     Defendants are without knowledge or information sufficient to form a belief as to Paragraph 25, except admit that ES has become one of the fastest-growing equipment solutions providers in the United States.

26.     Defendants deny the allegations in Paragraph 26, except admit that Defendant Chheda has substantial experience in venture capital and is a principal in multiple venture capital funds doing business as "Romulus Capital."

27.     Defendants deny the allegations in Paragraph 27, except admit that the venture capital funds of which Defendant Chheda is a principal invest in early stage as well as other companies.

28.     Defendants deny the allegations in Paragraph 28, except admit that Paragraph 28 purports to quote a Forbes online article, which speaks for itself and is the best evidence of its content.

29.     Defendants deny the allegations in Paragraph 29, except admit that Paragraph 29 purports to quote an online interview of Defendant Chheda, which speaks for itself and is the best evidence of its content.

30.     Defendants admit the allegations in Paragraph 30.

31.     Defendants admit the allegations in Paragraph 31.

32.     Defendants admit the allegations in Paragraph 32.

4

33. Defendants deny the allegations in Paragraph 33, except admit that Defendant Chheda has substantial experience in the venture capital sector. Further answering, the Counts relating to the allegations in Paragraph 33 have been dismissed and the Court has found that Defendant Chheda and the Schlacks had only a commercial relationship "that does not rise to the level of Chheda being considered a fiduciary for [the Schlacks]."

34. Defendants deny the allegations in Paragraph 34, except admit that in 2020, Defendant Chheda was induced by William and Jabbok Schlacks to enter into option agreements in exchange for assisting them to engage in venture capital efforts to source early-stage investments on behalf and for ES using ES capital.

35. The Counts relating to the allegations in Paragraph 35 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations except admit that Defendant Chheda had discussed a potential Series C round of financing with ES but that round did not proceed.

36. The Counts relating to the allegations in Paragraph 36 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations except admit that ES raised money through simple agreements for future equity, or "SAFEs."

37. The Counts relating to the allegations in Paragraph 37 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations except admit that ES's auditor had recommended that the SAFEs may need to be treated as debt.

38. The Counts relating to the allegations in Paragraph 38 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations except admit that Defendant Chheda and the Schlacks discussed the impact of the SAFEs on debt-to-equity ratios.

5

39.     The Counts relating to the allegations in Paragraph 39 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that SAFEs would have an impact on debt-to-equity ratios.

40.     The Counts relating to the allegations in Paragraph 40 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that, at a board meeting on or about December 17, 2020, the ES Board discussed converting the SAFEs through a Series C round of financing.

41.     The Counts relating to the allegations in Paragraph 41 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations.

42.     The Counts relating to the allegations in Paragraph 42 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that Defendant Chheda and the Schlacks worked to prepare documents describing efforts to source early-stage investments on behalf and for ES using ES capital.

43.     The Counts relating to the allegations in Paragraph 43 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that Paragraph 43 purports to describe a document, which speaks for itself and is the best evidence of its terms.

44.     The Counts relating to the allegations in Paragraph 44 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that Paragraph 44 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

45.     The Counts relating to the allegations in Paragraph 45 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations. Further answering, in the Dismissal, the Court rejected the allegations in Paragraph 45 and held

that the referenced materials "do[] not indicate any of the allegations by Plaintiffs" and "do not mention any proposal regarding a venture fund or deal between Plaintiffs and [Defendant] Chheda."

46.     The Counts relating to the allegations in Paragraph 46 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that Paragraph 46 purports to characterize documents, which speak for themselves and are the best evidence of their terms.  Further answering, in the Dismissal, the Court rejected the allegations in Paragraph 46 and held that "[n]either agreement expresses the arrangement Plaintiffs allege they made with [Defendant] Chheda," that "Plaintiffs' documents do not support Plaintiffs' allegations," and that "Plaintiffs admit to knowing that the option agreements they agreed to made no obligation to [Defendant] Chheda or [Defendant] Transfer LLC to provide anything to the ES Venture fund."

47.     The Counts relating to the allegations in Paragraph 47 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit Defendant Chheda proposed that the Schlacks would transfer an amount of shares they would receive through ES's equity bonus plan to him or an entity he controlled that would not be part of any ES Venture Fund and would have no obligations to support any ES Venture Fund.

48.     The Counts relating to the allegations in Paragraph 48 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations.

49.     The Counts relating to the allegations in Paragraph 49 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations. Further answering, in the Dismissal, the Court rejected the allegations in Paragraph 49 and held that it "need not accept as true factual assertions that are contradicted by the complaint itself, by

7

exhibits attached to the complaint or documents relied on by the complaint, or by facts or which the court may take judicial notice. Therefore, the Court does not accept Plaintiffs' reliance allegations as true regarding entering into the option agreements."

50. The Counts relating to the allegations in Paragraph 50 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations. Further answering, in the Dismissal, the Court rejected Plaintiffs' allegations and held that "the Court does not accept Plaintiffs' reliance allegations as true."

51. The Counts relating to the allegations in Paragraph 51 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations.

52. The Counts relating to the allegations in Paragraph 52 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations.

53. The Counts relating to the allegations in Paragraph 53 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations except admit that Paragraph 53 purports to characterize documents, which speak for themselves and are the best evidence of their terms.

54. The Counts relating to the allegations in Paragraph 54 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations except admit that Paragraph 54 purports to characterize documents, which speak for themselves and are the best evidence of their terms.

55. The Counts relating to the allegations in Paragraph 55 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations except admit that Paragraph 55 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

56.     The Counts relating to the allegations in Paragraph 56 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations.

57.     The Counts relating to the allegations in Paragraph 57 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations.

58.     The Counts relating to the allegations in Paragraph 58 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations. Further answering, the Court rejected the allegations in Paragraph 58 and held that Defendant Chheda did not make a "false promise" to "ES's Board" and that the materials presented to ES's Board "do[] not indicate any of the allegations by Plaintiffs."

59.     The Counts relating to the allegations in Paragraph 59 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations.

60.     The Counts relating to the allegations in Paragraph 60 have been dismissed and thus no response is required.  To the extent a response is required, Paragraph 60 states a legal conclusion to which no response is required and, if a response is required, Defendants deny the allegations

61.     The Counts relating to the allegations in Paragraph 61 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that, as the Schlacks and ES knew, and as the Court confirmed in the Dismissal, the shares under the Option Agreements were to be transferred to an entity under Mr. Chheda's control that had no obligation to use the shares for any purpose.  Further answering, in the Dismissal, the Court rejected the allegations in Paragraph 61 and held that "[n]either agreement expresses the arrangement Plaintiffs allege they made with [Defendant] Chheda," that "Plaintiffs' documents do not support Plaintiffs' allegations," and that "Plaintiffs admit to knowing that the option

agreements they agreed to made no obligation to [Defendant] Chheda or [Defendant] Transfer LLC to provide anything to the ES Venture fund."

62.     The Counts relating to the allegations in Paragraph 62 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that Paragraph 62 purports to characterize documents, which speak for themselves and are the best evidence of their terms.  Further answering, in the Dismissal, the Court rejected the allegations in Paragraph 62 and held that "the Court does not accept Plaintiffs' reliance allegations as true."

63.     Defendants deny the allegations in Paragraph 63, except admit that Paragraph 63 purports to characterize the Option Agreements, which speak for themselves and are the best evidence of their terms.

64.     The Counts relating to the allegations in Paragraph 64 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that Paragraph 64 purports to characterize documents, which speak for themselves and are the best evidence of their terms.

65.     Defendants deny the allegations in Paragraph 65, except admit that Paragraph 65 purports to characterize documents, which speak for themselves and are the best evidence of their terms.

66.     The Counts relating to the allegations in Paragraph 66 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations.

67.     The Counts relating to the allegations in Paragraph 67 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations.

68.     Defendants deny the allegations in Paragraph 68.

69.     The Counts relating to the allegations in Paragraph 69 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that Paragraph 69 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

70.     The Counts relating to the allegations in Paragraph 70 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that Paragraph 70 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

71.     The Counts relating to the allegations in Paragraph 71 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that Paragraph 71 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

72.     The Counts relating to the allegations in Paragraph 72 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that Paragraph 72 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

73.     The Counts relating to the allegations in Paragraph 73 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that the ES Board approved the equity bonus plan.  Further answering, in the Dismissal, the Court rejected the allegations in Paragraph 73 and held that Defendant Chheda did not make a "false promise" to "ES's Board" and that the materials presented to ES's Board "do[] not indicate any of the allegations by Plaintiffs."

74.     The Counts relating to the allegations in Paragraph 74 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations

except admit that Paragraph 74 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

75. The Counts relating to the allegations in Paragraph 75 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations.

76. The Counts relating to the allegations in Paragraph 76 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations except admit that Peter Moldave assisted in the drafting of the option agreements, which are the principal evidence of their terms.

77. Defendants deny the allegations in Paragraph 77, except admit that Paragraph 77 purports to characterize documents, which speak for themselves and are the best evidence of their terms.

78. Defendants deny the allegations in Paragraph 78, except admit that Paragraph 78 purports to characterize documents, which speak for themselves and are the best evidence of their terms. Further answering, the allegations in Paragraph 78 that William Schlacks corrected an "error" concerning the number of shares covered by the Option Agreements confirm that Plaintiffs read the Option Agreements carefully, including the number of shares reflected in the Option Agreements.

79. Defendants deny the allegations in Paragraph 79, except admit that Paragraph 79 purports to characterize documents, which speak for themselves and is the best evidence of their terms.

80. Defendants admit the allegations in Paragraph 80.

81. The Counts relating to the allegations in Paragraph 81 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations

except admit that Paragraph 81 purports to characterize documents, which speak for themselves and are the best evidence of their terms.

82.     Defendants deny the allegations in Paragraph 82 except admit that Paragraph 82 purports to characterize stock transfer agreements, which are the principal evidence of their terms.

83.     The Counts relating to the allegations in Paragraph 83 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations and further deny that Defendant Chheda had made any earlier commitments.  Further answering, in the Dismissal, the Court rejected the allegations in Paragraph 83 and held that "the Court does not accept Plaintiffs' reliance allegations as true regarding entering into the option agreements."

84.     The Counts relating to the allegations in Paragraph 84 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that individuals associated with Mr. Chheda and Romulus Capital expended substantial effort searching for and securing venture capital investments on behalf of ES.

85.     Defendants admit the allegations in Paragraph 85.

86.     The Counts relating to the allegations in Paragraph 86 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations and further deny that Defendant Chheda had made any promise to use transferred ES shares to compensate anyone.  Further answering, in the Dismissal, the Court rejected the allegation that Defendant Chheda made a "false promise" to "ES's Board" and held that the materials presented to the ES Board "do[] not indicate any of the allegations by Plaintiffs."

87.     The Counts relating to the allegations in Paragraph 87 have been dismissed and thus no response is required.  To the extent a response is required, Defendants deny the allegations except admit that individuals associated with Mr. Chheda and Romulus Capital expended substantial effort searching for and securing venture capital investments on behalf of ES.

88.     Defendants are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 88.

89.     Defendants deny the allegations in Paragraph 89, except admit that Paragraph 89 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

90.     Defendants deny the allegations in Paragraph 90, except admit that Paragraph 89 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

91.     Defendants deny the allegations in Paragraph 91, except admit that Paragraph 91 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

92.     Defendants deny the allegations in Paragraph 92, except admit that Paragraph 92 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

93.     Defendants deny the allegations in Paragraph 93, except admit that Paragraph 93 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

94.     Defendants deny the allegations in Paragraph 94, except admit that Paragraph 94 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

95.     Defendants deny the allegations in Paragraph 95, except admit that, as the Schlacks knew and agreed to, the Second Amendment doubled the number of shares of ES common stock.

96.     Defendants deny the allegations in Paragraph 96.

97.     Defendants deny the allegations in Paragraph 97.

98.     Defendants deny the allegations in Paragraph 98.

99.     Defendants deny the allegations in Paragraph 99.

100.     Defendants deny the allegations in Paragraph 100.

101.     Defendants deny the allegations in Paragraph 101, except admit that the Schlacks signed the Second Amendments via DocuSign.

102. The Counts relating to the allegations in Paragraph 102 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations and further deny that Defendant Chheda had made any commitment to use shares received under the options agreement for any purpose. Further answering, in the Dismissal, the Court rejected the allegations in Paragraph 102 and held that it "need not accept as true factual assertions that are contradicted by the complaint itself, by exhibits attached to the complaint or documents relied on by the complaint, or by facts or which the court may take judicial notice. Therefore, the Court does not accept Plaintiffs' reliance allegations as true regarding entering into the option agreements."

103. The Counts relating to the allegations in Paragraph 103 have been dismissed and thus no response is required. To the extent a response is required, Defendants state that they are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 103.

104. The Counts relating to the allegations in Paragraph 104 have been dismissed and thus no response is required. To the extent a response is required, Defendants deny the allegations except admit that, as the Schlacks knew, the ES shares transferred pursuant to the option agreements were to go to an entity under Defendant Chheda's control with no commitment to use them for the ES Venture Fund.

105. Defendants deny the allegations in Paragraph 105, except admit that Paragraph 105 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

106. Defendants deny the allegations in Paragraph 106, except admit that Paragraph 106 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

107. Defendants deny the allegations in Paragraph 107, except admit that Paragraph 107 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

108.    Defendants admit the allegations in Paragraph 108.

109.    Defendants deny the allegations in Paragraph 109, except admit that Paragraph 109 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

110.    Defendants deny the allegations in Paragraph 110, except admit that Paragraph 110 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

111.    Paragraph 111 states a legal conclusion to which no response is required.

## COUNT I

112.    This Count has been dismissed and thus no response is required.

113.    This Count has been dismissed and thus no response is required.

114.    This Count has been dismissed and thus no response is required.

115.    This Count has been dismissed and thus no response is required.

116.    This Count has been dismissed and thus no response is required.

117.    This Count has been dismissed and thus no response is required.

118.    This Count has been dismissed and thus no response is required.

119.    This Count has been dismissed and thus no response is required.

120.    This Count has been dismissed and thus no response is required.

121.    This Count has been dismissed and thus no response is required.

122.    This Count has been dismissed and thus no response is required.

123.    This Count has been dismissed and thus no response is required.

124.    This Count has been dismissed and thus no response is required.

## COUNT II

125.    Defendants incorporate by reference the above responses.

126.    Defendants deny the allegations in Paragraph 126, except admit that Paragraph 126 purports to characterize a document, which speaks for itself and is the best evidence of its contents.

16

127.    Defendants deny the allegations in Paragraph 127, except admit that Paragraph 127 purports to characterize a document, which speaks for itself and is the best evidence of its contents.

128.    Defendants deny the allegations in Paragraph 128, except admit that Paragraph 128 purports to characterize a document, which speaks for itself and is the best evidence of its contents.

129.    Defendants deny the allegations in Paragraph 129.

130.    Defendants deny the allegations in Paragraph 130.

131.    Defendants deny the allegations in Paragraph 131.

132.    Defendants deny the allegations in Paragraph 132.

133.    Defendants deny the allegations in Paragraph 133.

134.    Defendants deny the allegations in Paragraph 134.

135.    Paragraph 135 states a legal conclusion to which no response is required.

136.    Defendants deny the allegations in Paragraph 136.

137.    Paragraph 137 states a legal conclusion to which no response is required.

138.    Paragraph 138 states a legal conclusion to which no response is required.

## COUNT III

139.    This Count has been dismissed and thus no response is required.

140.    This Count has been dismissed and thus no response is required.

141.    This Count has been dismissed and thus no response is required.

142.    This Count has been dismissed and thus no response is required.

143.    This Count has been dismissed and thus no response is required.

144.    This Count has been dismissed and thus no response is required.

145.    This Count has been dismissed and thus no response is required.

146.    This Count has been dismissed and thus no response is required.

147.    This Count has been dismissed and thus no response is required.

## COUNT IV

148.    This Count has been dismissed and thus no response is required.

149.    This Count has been dismissed and thus no response is required.

150.    This Count has been dismissed and thus no response is required.

151.    This Count has been dismissed and thus no response is required.

152.    This Count has been dismissed and thus no response is required.

153.    This Count has been dismissed and thus no response is required.

154.    This Count has been dismissed and thus no response is required.

155.    This Count has been dismissed and thus no response is required.

156.    This Count has been dismissed and thus no response is required.

157.    This Count has been dismissed and thus no response is required.

158.    This Count has been dismissed and thus no response is required.

159.    This Count has been dismissed and thus no response is required.

160.    This Count has been dismissed and thus no response is required.

161.    This Count has been dismissed and thus no response is required.

162.    This Count has been dismissed and thus no response is required.

163.    This Count has been dismissed and thus no response is required.

164.    This Count has been dismissed and thus no response is required.

165.    This Count has been dismissed and thus no response is required.

166.    This Count has been dismissed and thus no response is required.

167.    This Count has been dismissed and thus no response is required.

168.    This Count has been dismissed and thus no response is required.

## COUNT V

169.    Defendants incorporate by reference the above responses.

170.    Defendants deny the allegations in Paragraph 170, except admit that Paragraph 170 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

171.    Defendants deny the allegations in Paragraph 171, except admit that Paragraph 171 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

172.    Defendants deny the allegations in Paragraph 172, except admit that Paragraph 172 purports to characterize a document, which speaks for itself and is the best evidence of its terms.

173.    Defendants deny the allegations in Paragraph 173.

174.    Defendants deny the allegations in Paragraph 174.

175.    Defendants deny the allegations in Paragraph 175.

176.    Defendants deny the allegations in Paragraph 176.

177.    Defendants deny the allegations in Paragraph 177.

178.    Defendants deny the allegations in Paragraph 178.

179.    Defendants deny the allegations in Paragraph 179.

180.    Defendants deny the allegations in Paragraph 180.

181.    Defendants deny the allegations in Paragraph 181.

182.    Paragraph 182 states a legal conclusion to which no response is required.

183.    Paragraph 183 states a legal conclusion to which no response is required.

### COUNT VI

184.    This Count has been dismissed and thus no response is required.

185.    This Count has been dismissed and thus no response is required.

186.    This Count has been dismissed and thus no response is required.

187.    This Count has been dismissed and thus no response is required.

188.    This Count has been dismissed and thus no response is required.

189.    This Count has been dismissed and thus no response is required.

190.    This Count has been dismissed and thus no response is required.

191.    This Count has been dismissed and thus no response is required.

192.    This Count has been dismissed and thus no response is required.

**COUNT VII**

193.    This Count has been dismissed and thus no response is required.

194.    This Count has been dismissed and thus no response is required.

195.    This Count has been dismissed and thus no response is required.

196.    This Count has been dismissed and thus no response is required.

197.    This Count has been dismissed and thus no response is required.

198.    This Count has been dismissed and thus no response is required.

199.    This Count has been dismissed and thus no response is required.

200.    This Count has been dismissed and thus no response is required.

201.    This Count has been dismissed and thus no response is required.

202.    This Count has been dismissed and thus no response is required.

203.    This Count has been dismissed and thus no response is required.

204.    This Count has been dismissed and thus no response is required.

205.    This Count has been dismissed and thus no response is required.

206.    This Count has been dismissed and thus no response is required.

**COUNT VIII**

207.    This Count has been dismissed and thus no response is required.

208.    This Count has been dismissed and thus no response is required.

209.    This Count has been dismissed and thus no response is required.

210.    This Count has been dismissed and thus no response is required.

211.    This Count has been dismissed and thus no response is required.

212.    This Count has been dismissed and thus no response is required.

213.    This Count has been dismissed and thus no response is required.

214.    This Count has been dismissed and thus no response is required.

215.    This Count has been dismissed and thus no response is required.

## ADDITIONAL AFFIRMATIVE DEFENSES

### FAILURE TO STATE A CLAIM

The First Amended Complaint fails to state a claim on which relief can be granted.

### STATUTE OF LIMITATIONS/LACHES

Plaintiffs' claims are barred by applicable statutes of limitations and/or laches.

### INEQUITABLE CONDUCT

Plaintiffs' claims are barred by their own inequitable conduct.

### UNCLEAN HANDS

Plaintiffs' claims are barred by their unclean hands.

### CONTRIBUTORY NEGLIGENCE

Plaintiffs' claims are barred in whole or in part by their own contributory negligence.

### ARBITRATION

Plaintiffs' claims are barred because they are subject to arbitration.

### SUBJECT MATTER JURISDICTION

Because Plaintiffs' claims are subject to arbitration, this Court does not have subject matter jurisdiction over this dispute.

### VENUE

Because Plaintiffs' claims are subject to arbitration, venue in this Court is improper.

## COUNTERCLAIMS

Schlacks 2020 Transfer LLC ("2020LLC") brings this compulsory counterclaim against Jabbok Schlacks and William Schlacks as follows:

## NATURE OF THE ACTION

1.      2020LLC brings this counterclaim as a result of the Schlacks' failure to deliver stock in EquipmentShare.com Inc ("ES") to 2020LLC under a pair of option agreements.

2.      The Schlacks, who are brothers and officers, directors, and major shareholders of ES, entered into the option agreements in 2020, which the parties amended in 2021 and then again in 2022.  Under the option agreements, 2020LLC has the option to purchase shares of ES from the Schlacks (the "Option Shares").  The Schlacks proposed the original option agreements to induce Neil Chheda, the sole manager of 2020LLC and an experienced venture capitalist, to participate in an effort to identify companies in which ES could invest capital.  In 2021 and 2022, Mr. Chheda and his associates helped the Schlacks and ES place nearly $30 million in capital.

3.      In 2022, the Schlacks formed TKF, a limited partnership.  TKF was chartered to source and invest capital in early-stage companies, which was similar to what Mr. Chheda had been assisting the Schlacks and ES to do since 2020.  In connection with this new venture, the Schlacks asked Mr. Chheda to become a limited partner in TKF and to invest up to $2.5 million in TKF.  They also asked Mr. Chheda to agree to the Schlacks' substantially favorable profit distribution terms depending on TKF's performance.  In exchange, the Schlacks agreed to increase the number of options available to 2020LLC under the option agreements in amendments to the option agreements.

4.      In February 2024, 2020LLC properly exercised its right to purchase its vested option shares under the terms of the option agreements and amendments.  The Schlacks, however,

have refused to tender the shares and have refused to provide 2020LLC with payment wiring instructions to finalize the exercise of its option to purchase the shares.

5. 2020LLC seeks a declaratory ruling that the Schlacks must deliver the Option Shares to 2020LLC. 2020LLC also seeks damages for breach of contract against the Schlacks of, at a minimum, $59,699,550, which is the difference between the exercise price ($4.22) and the latest price ES paid for redeeming comparable ES shares ($22.00) multiplied by the number of Option Shares, or 3,357,680.

6. Alternatively, 2020LLC seeks an order of specific performance requiring the Schlacks to deliver the Option Shares to 2020LLC in exchange for the payment of the contractual price for the Option Shares. ES is a private corporation, and its shares are illiquid. As a result, the true value of the ES shares is difficult to ascertain and thus Petitioners are unlikely to be adequately compensated by an award of damages. Further, without prompt equitable relief, the Option Shares may be transferred or pledged to a bona fide third-party purchaser and thus 2020LLC may forever lose the opportunity of owning the shares pursuant to the option agreements and will be irreparably harmed without any adequate remedy at law.

**PARTIES**

7. 2020LLC is a Delaware limited liability company with its principal place of business in Boston, Massachusetts. 2020LLC's manager is Neil Chheda, a resident of Weston, Massachusetts. Mr. Chheda is also a director at ES.

8. Jabbok Schlacks is a resident of Missouri. He is, and was at all relevant times, the Chief Executive Officer and a director of ES. In addition to millions of as-yet unvested options in ES, Jabbok currently holds 23,899,112 common shares of ES.

9.     William Schlacks is a resident of Missouri.  He is, and was at all relevant times, the President and a director of ES.  In addition to millions of as-yet unvested options in ES, William currently holds 23,899,112 common shares of ES.

10.     Non-party ES is a privately held corporation organized under the laws of Delaware, with its principal place of business in Columbia, Missouri.  ES's principal business is the sale and rental of construction equipment.  Based on recent funding transactions and valuations pursuant to Department of Treasury regulation 409A, ES has a market capitalization approaching $4 billion.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

12.     This Court has jurisdiction over Jabbok and William Schlacks because 2020LLC's claims arise out of or relate to Jabbok and William Schlacks' contacts with, and conduct within, this District.  Further, this Court has general jurisdiction over Jabbok and William Schlacks because they each reside in this District and are residents of Missouri.

13.     Although venue would be proper in this Court under 28 U.S.C. § 1391(b)(1) because Jabbok and William Schlacks each reside in this District and are residents of Missouri, this dispute is governed by an arbitration clause and Defendants reserve their rights.  Because the counterclaim is compulsory, 2020LLC has no choice but to allege the counterclaim in this Court at this time and does not concede that the arbitration clause does not apply to the First Amended Complaint or these counterclaims.

## FACTUAL ALLEGATIONS

***The Original Option Agreements***

1.      On December 31, 2020, Jabbok entered into the Jabbok Schlacks Option Agreement with 2020LLC (the "Jabbok Schlacks Option Agreement"). Also on December 31, 2020, William entered into the William Schlacks Option Agreement with 2020LLC (the "William Schlacks Option Agreement," and together with the Jabbok Schlacks Option Agreement, the "Original Option Agreements"). The Original Option Agreements mirror one another and are attached as **Exhibit A**.

2.      One of the reasons for the Original Option Agreements was to induce Mr. Chheda to work with Jabbok and William to engage in venture capital efforts to source early-stage investments on behalf of and for ES using ES capital. Mr. Chheda has substantial experience in venture capital and runs a network of venture capital funds under the d/b/a "Romulus Capital" ("Romulus"). Certain Romulus funds are also themselves investors in ES. Mr. Chheda actively participated in this endeavor, and he and his associates helped ES invest tens of millions of dollars from 2020 to 2022, including in such companies as Branch Technologies, Inc., Cost Certified, Inc., Felux, Inc., Foresight, Inc., Flexbase Technologies, Inc., Reconstruct, Inc., Skillit, Inc., and Soil Connect Services, Inc.

3.      The Original Option Agreements contain identical provisions. As they state, the Schlacks were each receiving from ES a grant of 767,196 shares of ES common stock (the "Grant Shares") and each agreed to grant to 2020LLC options for one-third of that amount, or 255,732 Option Shares. The one-third number was arrived at because Jabbok, William, and Mr. Chheda were each going to be involved in efforts to source early-stage investments on behalf of and for ES. As Section 1(a) of the Original Option Agreements provides:

It is anticipated that following the date hereof, the Seller [each of William and Jabbok] will receive a grant of 767,196 shares of Common Stock (or options to purchase shares of Common Stock) (the "Award Shares") pursuant to an award agreement (the "Grant Agreement") with the Company [ES], which Grant Agreement will provide for vesting conditions on the acquisition or retention of such Award Shares essentially similar to those set forth on Exhibit A hereto (such vesting conditions as set forth in the Grant Agreement, the "Vesting Conditions") and an exercise price to be paid to the Company to acquire such Award Shares (the "Per Share Exercise Price"). Seller shall notify Buyer promptly upon receipt by Seller of the Grant Agreement, providing a copy thereof.

(Ex. A, § 1(a).)

4. Exhibit A of the Original Option Agreements, titled "Vesting Conditions," provided a vesting schedule that began on the first grant of Award Shares under the Grant Agreement and proceeded through three subsequent vesting triggers based on "such time[s]" as ES achieved a particular valuation—from $2 billion, to $3 billion, to $4 billion.

5. Section 1(b), in turn, provides:

Subject to the terms and conditions of this Agreement, the Seller hereby grants the Buyer the right to acquire (the "Option Right") from time to time up to 255,732 shares (the "Option Shares") of Common Stock of the Company from Seller, subject to the terms and conditions of this Agreement including vesting provisions.

(*Id.* § 1(b).)

6. The Original Option Agreements further provide that:

The Option Right shall vest and become exercisable for tranches of Option Shares (such shares becoming "Vested Options Shares") at the time as the Vesting Condition for such tranche is satisfied for the corresponding Award Shares. Seller shall notify Buyer promptly each time any Vesting Conditions are so satisfied. The Buyer may purchase from Seller from time to time, pursuant to the terms hereof, the Vested Options Shares by notice to the Seller together with tender of payment in cash (by wire transfer, certified check or official bank check) of the Per Share Exercise Price for each such Vested Option Share (such transaction being referred to as a "Sale Closing"). The Sale Closing shall occur promptly following such notification and tender of payment by Buyer. For avoidance of doubt, the Option Right may be exercised at any time or from time

to time with respect to all or any portions of the Vested Option Shares, and such right shall continue to be exercisable through the term of exercisability under the Grant Agreement (such time or event causing termination, a "Termination Event").

(*Id.* § 2(a).)

### The First Amendments, the Stock Split, and the First Exercise

7.      A few months after the Original Option Agreements, Jabbok and William offered Mr. Chheda an alternative, partially accelerated vesting schedule in return for decreasing the total number of Option Shares.  Mr. Chheda accepted, and Jabbok and William each entered into "Amendment No. 1 to Option Agreement" with 2020LLC, effective as of June 16, 2021 (together, the "First Amendments"), which modified certain terms of the Original Option Agreements.  The First Amendments mirror one another and are attached as **Exhibit B**.  The First Amendments "confirm[ed] that the Per Share Option Price is $33.77 per share, which is set to be the fair market value of the shares based on a 409A valuation obtained recently."  The First Amendments reduced the number of Option Shares from 255,732 to 210,979 and modified the vesting schedule so that the four vesting events in the Original Option Agreements changed to two vesting events—half of the 210,979 Option Shares, or 105,490 Option Shares, were to vest on June 17, 2021, and the other half, or 105,489 Option Shares, were to vest "at such time as [ES] achieves a Valuation of no less than $4 billion, provided that such Valuation is achieved on or before June 30, 2024."

8.      Soon after the First Amendments, ES underwent a 1:8 stock split.  Pursuant to Section 3 of the Original Option Agreements, "[w]henever [ES] shall . . . subdivide its outstanding shares of Common Stock . . . the number of Option Shares and the Per Share Price shall be equitably adjusted . . . as of the effective date of such subdivision."  As a result, the 105,490 Option Shares that vested on June 17, 2021 under the First Amendments at $33.77 per share effectively became 843,920 Option Shares at $4.22 per share.  Likewise, the 105,489 Option Shares that were to vest at the $4 billion valuation became 843,912 Option Shares at the same price.

9.     In June 2021, 2020LLC exercised its option to purchase 839,420 Option Shares that vested on June 17, 2021 under the First Amendments from each Jabbok and William, for a total of 1,678,840 shares (the "First Exercise").  2020LLC paid the option price and Jabbok and William provided the Option Shares pursuant to the First Exercise.

***TKF LP Is Formed***

10.     In the fall of 2022, Jabbok, William, and Mr. Chheda decided again to change their arrangement.  First, Jabbok and William wished to establish a stand-alone venture capital fund.  That is, instead of Jabbok, William, and Mr. Chheda sourcing investment companies and funding those investments with cash from ES's balance sheet, Jabbok and William decided to form a limited partnership—TKF II L.P. ("TKF LP")—to make investments.  Second, Jabbok and William requested that Mr. Chheda personally contribute substantial capital to TKF LP and to cede to Jabbok and William management rights over TKF LP.  Finally, Jabbok and William requested that they and they alone receive performance fees from TKF LP investments in the form of "carried interest."  This time, in return, Jabbok and William would increase the total number Option Shares to Mr. Chheda.

11.     The structure settled upon was that Jabbok and William would become members of TKF II LLC ("TKF LLC"), a limited liability company that would serve as the general partner of TKF LP.  The TKF LP Limited Partnership Agreement (the "TKF Agreement") is attached as **Exhibit C**.  As the general partners, Jabbok and William (through an affiliated limited partner) would own 12.5 percent of TKF LP.  ES would become a limited partner of TKF LP.  ES would own 75% of TKF LP and would be responsible for making up to $12 million in capital contributions ($3 million as an initial contribution and up to $9 million in additional contributions).  Mr. Chheda, via his wholly owned RC Opportunity LLC ("RC Opportunity"), would become a

12.5% limited partner and would be responsible for up to $2.5 million in contributions ($500,000 initially and up to $2 million additionally).  (*See* Ex. C at Sch. A-1.)

12.	One major benefit to TKF LLC (and to its members, Jabbok and William) of being the general partner—in addition to having control of TKF LP—is that, according to the TKF Agreement, TKF LLC would receive performance fees in the form of "carried interest." Accordingly, under Section 4.2 of the TKF Agreement, distributions would first be made pro rata according to ownership in TKF LP (12.5%, 12.5%, and 75%) until the limited partners received a 100% return of their capital contributions (the "100% Hurdle").  (Ex. C, § 4.2(a).)  After that, distributions would favor the general partner as follows: (1) if the limited partners achieve the 100% Hurdle but distributions total *less than* 500% of their capital contributions, the general partner would receive 20% of the limited partners' pro rata distribution; (2) if the limited partners receive distributions *equal to or exceeding* 500% of their capital contributions, the general partner would receive 40% of the limited partners' pro rata distributions.  (*Id*. § 4.2(b).)

13.	The differences between the arrangement among Jabbok, William, and Mr. Chheda that contributed to the parties entering into the Original Option Agreement on December 31, 2020, and the new TKF LP fund structure, were substantial.  First, Mr. Chheda was being asked to contribute through RC Opportunity up to $2.5 million to TKF LP.  Before the new structure, Mr. Chheda was not contributing and putting at risk any capital.  Also, in the prior structure, while it was contemplated that Mr. Chheda, with his venture capital background, would be able to substantially shape the direction and focus of the endeavor, in the new structure, Mr. Chheda would cede much control to Jabbok and William and become (through RC Opportunity) a limited partner of TKF LP with no legal right to manage or direct TKF LP.  Finally, not only was Mr. Chheda now being expected to contribute up to $2.5 million, but he was also being asked to pay to Jabbok and William carried interest on that $2.5 million investment.

*The Second Amendments*

14.     Mr. Chheda agreed to these new terms and to make the investment in TKF LP in return for an increase in the number Option Shares and a change to the vesting schedule of the unvested options.   Given the changed structure—which now had Mr. Chheda committing substantial capital, ceding control to Jabbok and William, and giving them the exclusive right to carried interest at a substantially generous rate—the parties agreed that the amount of Option Shares Mr. Chheda's 2020LLC entity would be entitled to from each of Jabbok and William would increase to a total of 3,357,860 shares.  This doubled the number of Option Shares reflected in the Second Amendments (after the 1:8 stock split) and constitutes roughly half (approximately 55%) of the 6,137,568 Grant Shares (whereas previously 2020LLC had the right to approximately one-third of the Grant Shares).  The parties also agreed to change certain deadlines related to the Option Shares that would vest when ES achieved a $4 billion valuation.[2]

15.     Accordingly, on or about December 16, 2022, Jabbok and William each entered into "Amendment No. 2 to Option Agreement" with 2020LLC (together, the "Second Amendments"), which mirror one another and are attached as **Exhibit D**.  Pursuant to the Second Amendments, a total of 3,357,680 Option Shares (1,678,840 Option Shares from each Jabbok and William) vested on June 17, 2021.  (Ex. D.)  An additional 3,357,680 Option Shares—again, half that amount from each of Jabbok and William—shall vest at such time as ES achieves a $4 billion valuation, within the parameters of the updated 2024 deadlines.  (*Id.*)

---

[2] As described above, the Original Option Agreements were originally structured so that 2020LLC received in Option Shares one-third of the Grant Shares, or 255,732 Option Shares compared to 767,196 Grant Shares. In the First Amendments, that number was reduced to 210,979 Option Shares, with 105,490 vesting on June 17, 2021 and 105,480 vesting at the $4 billion valuation. When the 1:8 stock split occurred, those amounts were effectively changed by operation of the Original Option Agreements to 843,920 and 843,912, or a total of 1,687,832 out of the split-adjusted 6,137,568 Grant Shares, which was slightly less than but roughly equivalent to the one-third division originally conceived in the Original Option Agreements.

16. Jabbok Schlacks read the Second Amendment before he signed it or caused it to be signed.

17. An attorney representing Jabbok Schlacks reviewed the Second Amendment before Jabbok Schlacks signed it or caused it to be signed.

18. An attorney known to Jabbok Schlacks (other than Peter Moldave) reviewed the Second Amendment before Jabbok Schlacks signed it or caused it to be signed.

19. Jabbok Schlacks had the opportunity to have an attorney review the Second Amendment before he signed it or caused it to be signed.

20. William Schlacks read the Second Amendment before he signed it or caused it to be signed.

21. An attorney representing William Schlacks reviewed the Second Amendment before William Schlacks signed it or caused it to be signed.

22. An attorney known to William Schlacks (other than Peter Moldave) reviewed the Second Amendment before William Schlacks signed it or caused it to be signed.

23. William Schlacks had the opportunity to have an attorney review the Second Amendment before he signed it or caused it to be signed.

24. William Schlacks acted on behalf of Jabbok Schlacks in communications with Mr. Chheda and/or 2020LLC concerning the Second Amendment.

25. The sum and substance of the transactions involved in the TKF Agreement and the Second Amendments were as follows: the Schlacks directed their new newly formed entities, TFK LLC and TKF LP, to enter into the TKF Agreement with newly formed RC Opportunity, and they also entered into the Second Amendments with 2020LLC. In return, in order for 2020LLC to receive the additional shares under the Second Amendments, 2020LLC (and its manager Mr.

Chheda), directed RC Opportunity to enter into the TKF Agreement while 2020LLC entered into the Second Amendments.

***2020LLC's Second Exercise of Its Right to Option Shares***

26.     As noted above, in June 2021, 2020LLC purchased 843,920 Option Shares that vested on June 17, 2021 under the First Amendments from each Jabbok and William.  On February 13, 2024, 2020LLC sought to exercise its right to purchase the remaining Option Shares that had vested on June 17, 2021 under the Second Amendments from both Jabbok and William, and 2020LLC provided notice of its intent in accordance with Section 2(a) of the Original Option Agreements (together, the "Second Exercise Notices," which mirror one another and are attached as **Exhibit E**).

27.     The Second Exercise Notices requested Jabbok's and William's wiring instructions so that 2020LLC could wire the funds necessary to purchase the remaining Option Shares from each of Jabbok and William.

28.     Neither Jabbok nor William provided any wiring instructions in response to the Second Exercise Notices, and each has refused, despite repeated requests, to provide wiring instructions.   Jabbok and William have also denied their obligations under the Second Amendments and have refused to proceed with the closing of the acquisition of the Option Shares pursuant to the Second Exercise Notices.

29.     The Schlacks are attempting to avoid their obligations by claiming that the Second Amendments contain an error with respect to the number of Option Shares.  This contention is without merit.  The Second Amendments are simple, three-page agreements with the alleged error on a single half-page of text describing the number of Option Shares and the vesting schedule. (*See* Ex. D.)  These are not 50-page, single-spaced tomes with easily missed fine print or confusing terminology.  Further, the Schlacks have admitted that they read the Second Amendments before

signing them. The Schlacks had or at least had access to, capable counsel and, on information and belief, had counsel review the Second Amendments before signing them. Nor may the Schlacks claim that they were relying on 2020LLC or Mr. Chheda as a fiduciary; this Court has already rejected that claim and has held that, at most, the Schlacks and Mr. Chheda and/or 2020LLC had a commercial relationship with respect to the Option Agreements. There was no error.

30.     In a final attempt to resolve the dispute, on May 15, 2024, 2020LLC sent a supplemental notice of exercise to Jabbok and to William (the "Supplemental Notices," which mirror one another and are attached as **Exhibit F**). In the Supplemental Notices, 2020LLC asked the Schlacks to confirm that they were ready to complete the transfer of the Option Shares. Neither the Schlacks nor their counsel have confirmed that they are prepared to do so.

## COUNT I
### (Declaratory Judgement)

31.     2020LLC re-alleges all of the foregoing allegations.

32.     There is an actual dispute among the parties concerning entitlement to the Option Shares pursuant to the Supplemental Notices.

33.     The Court should declare the rights of the parties and should declare that the Option Shares subject to the Supplemental Notices are the property of 2020LLC, that there was no scrivener's error, and that 2020LLC is entitled to prompt receipt of the Option Shares pursuant to the Supplemental Notices.

## COUNT II
### (Equitable Relief/Specific Performance – Jabbok Schlacks)

34.     2020LLC realleges all of the forgoing allegations.

35.     Jabbok has refused to proceed with the completion of 2020LLC's exercise of its option pursuant to the Supplemental Notice.

36.     The Option Shares are not public shares, and their value is difficult to ascertain. Thus, it is unlikely that 2020LLC will be adequately compensated by an award of monetary damages if Jabbok is not ordered to specifically perform and to timely provide the ES shares pursuant to the Jabbok Schlacks Option Agreement, as amended.

37.     The Court should order Jabbok to specifically perform all of his obligations under the Jabbok Schlacks Option Agreement, as amended, including by, in exchange for the agreed-upon purchase price, delivering the Option Shares due under the Jabbok Schlacks Option Agreement, as amended, and pursuant to the Supplemental Notice.

## COUNT III
### (Equitable Relief/Specific Performance – William Schlacks)

38.     2020LLC realleges all of the forgoing allegations.

39.     William has refused to proceed with the completion of 2020LLC's exercise of its option pursuant to the Supplemental Notices.

40.     The Option Shares are not public shares, and their value is difficult to ascertain. Thus, it is unlikely that 2020LLC will be adequately compensated by an award of monetary damages if William is not ordered to specifically perform and to timely provide the Option Shares due under the William Schlacks Option Agreement, as amended, and pursuant to the Supplemental Notice.

41.     The Court should order William to specifically perform all of his obligations under the William Schlacks Option Agreement, as amended, including by, in exchange for the agreed-upon purchase price, delivering the Option Shares due under the William Schlacks Option Agreement, as amended, and pursuant to the Supplemental Notice.

## COUNT IV
### (Breach of Contract – Jabbok Schlacks)

42.     2020LLC realleges all of the foregoing allegations.

34

43. The Second Amendment is a valid and enforceable agreement by and between Jabbok and 2020LLC.

44. 2020LLC performed its obligations under the Second Amendment by properly exercising its option to acquire the Option Shares pursuant to the Second Exercise Notice and the Supplemental Notice and by tendering the purchase price for the Option Shares upon Jabbok's confirmation of bank wiring instructions.

45. Jabbok breached his contractual obligations when he failed to recognize the Second Exercise Notice and the Supplemental Notice and by failing to provide and/or confirm wiring instructions. In failing to adequately respond to the Second Exercise Notice and the Supplemental Notice, Jabbok has failed to perform under the Second Amendment and has prevented 2020LLC from proceeding with its contractual rights to purchase the Option Shares and refused to tender the Option Shares to 2020LLC.

46. Jabbok's breach of the Jabbok Schlacks Option Agreement, as amended, has damaged 2020LLC in an amount to be proven at trial but in no event less than $29,849,775.

## COUNT V
### (Breach of Contract – William Schlacks)

47. 2020LLC realleges all of the foregoing allegations.

48. The Second Amendment is a valid and enforceable agreement by and between William and 2020LLC.

49. 2020LLC performed its obligations under the Second Amendment by properly exercising its option to acquire the Option Shares pursuant to the Second Exercise Notice and the Supplemental Notice and by tendering the purchase price for the Option Shares upon William's confirmation of bank wiring instructions.

50. William breached his contractual obligations when he failed to recognize the Second Exercise Notice and the Supplemental Notice and by failing to provide and/or confirm wiring instructions. In failing to adequately respond to the Second Exercise Notice and the Supplemental Notice, William has failed to perform under the William Schlacks Option Agreement, as amended, and has prevented 2020LLC from proceeding with its contractual rights to purchase the Option Shares and refused to tender the Option Shares to 2020LLC.

51. William's breach of the William Schlacks Option Agreement, as amended, has damaged 2020LLC in an amount to be proven at trial but in no event less than $29,849,775.

## PRAYER FOR RELIEF

**WHEREFORE**, Counterclaim-Plaintiff requests that the Court grant the following:

a. An order dismissing Counts II and V of the First Amended Complaint;

b. A declaration that there was no scrivener's error, and that 2020LLC is entitled to prompt receipt of the Option Shares pursuant to the Supplemental Notices;

c. An order that Jabbok shall specifically perform all of his obligations under the Second Amendment by providing and/or confirming wiring instructions and tendering the Option Shares due under the Jabbok Schlacks Option Agreement, as amended, and pursuant to the Supplemental Notice;

d. An order that William shall specifically perform all of his obligations under the Second Amendment by providing and/or confirming wiring instructions and tendering the Option Shares due under the William Schlacks Option Agreement, as amended, and pursuant to the Supplemental Notice;

e.　　An award that Jabbok has breached the Second Amendment and that 2020LLC is entitled to an award of damages from Jabbok of no less than $29,849,775;

f.　　An award that William has breached the Second Amendment and that 2020LLC is entitled to an award of damages from William of no less than $29,849,775;

g.　　An award of pre-judgment interest; and

h.　　An award awarding Counterclaim-Plaintiff all costs and expenses in this action, including all attorneys' fees.

Dated: February 28, 2025

Respectfully Submitted,

LEWIS RICE LLC

By: /s/ *Scott A. Wissel*
　　Scott A. Wissel, #49085
　　LEWIS RICE LLC
　　1010 Walnut, Suite 500
　　Kansas City, MO 64106
　　Telephone: 816-421-2500
　　Facsimile: 816-472-2500
　　Email: sawissel@lewisricekc.com


MORRISON & FOERSTER LLP

By: /s/ *Anthony S. Fiotto*
　　Anthony S. Fiotto *(admitted PHV)*
　　Nathaniel R. Mendell *(admitted PHV)*
　　Julia C. Koch *(admitted PHV)*
　　200 Clarendon Street
　　Boston, MA 02116
　　Telephone: 617-648-4700
　　Facsimile: 617-830-0142
　　Email: afiotto@mofo.com
　　Email: nmendell@mofo.com
　　Email: jkoch@mofo.com

　　*Attorneys for Neil Chheda and Schlacks 2020 Transfer LLC*

## CERTIFICATE OF SERVICE

I, Scott A. Wissel, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on February 28, 2025.

*/s/ Scott A. Wissel*
Scott A. Wissel